CHARLES E. SPINNING v. JAMES SULLIVAN AND TIMOTHY E. SULLIVAN.

*Assignee of non-negotiable paper bound by prior equities.*

The assignee of a non-negotiable *chose in action* takes it subject to ante- cedent equities, and the right to sue upon it in his own name makes no difference.

The rule that a *bona fide* holder of negotiable paper is not affected by prior equities of which he has no notice does not apply if he receives the paper from the original payee by assignment or sale instead of indorsement; he thus obtains no title superior to that of the payee,

in whose name only he can sue, and the maker is therefore not pre-
cluded from asserting equities that would have been valid as against
the payee.

Appeal from the Superior Court of Detroit.   Submitted
January 17.   Decided April 5.

Bill to correct note.   Complainant appeals.   Reversed.

*Levi T. Griffin (Griffin, Dickinson, Thurber & Hosmer)*
for complainant.

*Maybury & Conely* for defendants.

Graves, C. J.   This is a family dispute.   Complainant
and defendant Timothy are sons-in-law of defendant James.
A full history of all the incidents is needless.   The main
circumstances are as follows:

In November, 1871, the defendant James conveyed sixty
acres of land to complainant and in order to secure payment
of the purchase price, $3170, the latter executed his note
and mortgage to his father-in-law therefor.   The papers
were dated November 8th.   Several payments were made
and a portion were endorsed on the note and some others
on the mortgage, but a large amount was not endorsed on
either.

In March, 1878, Spinning agreed with William J. Water-
man to sell him the premises.   But the latter required that
the mortgage should be removed, and thereupon Spinning
asked his father-in-law to give up the mortgage and the note
running with it and to take his note for the amount remain-
ing unpaid, and the old gentleman consented.   In pursuance
of this understanding they called on Mr. Waterman on the
16th of the month and requested him to ascertain the sum
remaining on the old securities and to prepare a discharge
of the mortgage and a new note for the amount yet to be
paid.   He proceeded to comply.   As to whether the mort-
gage and note were both before him when he made his cal-
culations, the case is not clear.   He thinks the mortgage was
not then present and that he was guided by the writings on

the note. However this may be the mortgage was produced not long after, to be used in preparing a discharge. He figured up the sum called for by the old papers at $1344.27, and drew up the new note for that amount, and complainant, notwithstanding the feeling of surprise that the debt was so large, executed it and delivered it to the old gentleman. At the same time the old mortgage was discharged and the papers surrendered to complainant.

Several months later the complainant preferred a claim that in figuring up the sum remaining unpaid on the old note and mortgage and in drawing the new note for $1344.27 a mistake had been committed in overlooking and not giving him credit for an endorsement on the mortgage, and of even date with it, of $250, and in not giving him credit for $100 not endorsed at all which he had paid on the 18th of June, 1876, to Hubbard & Crocker on his father-in-law's request and on his promise to endorse it. The defendants and the wife of Timothy disputed this claim. They denied the genuineness of the endorsement of $250 and insisted that the $100 paid to Hubbard & Crocker was covered by one of the endorsements which Mr. Waterman reckoned in.

January 13, 1880, writings were entered into between the two defendants by which the defendant Timothy claims to have become owner of the note, and about four months thereafter this bill was filed. The object of the suit is to cancel a portion of the note on the ground of mistake in figuring up the consideration.

The evidence was taken in open court, and the learned judge had opportunity to see the witnesses and mark their bearing and deportment, and the value of this advantage as a means for judging of their trustworthiness will not be questioned. Having the benefit of this personal examination he formed a decided opinion on the equity against the old gentleman. He observed—"The facts are with the complainant. I have no doubt that the sums of $250 and $100 ought to have been credited in the settlement made with James Sullivan; that they were omitted by mistake and that consequently the note given at the settlement ought to have

been less in amount by $350." We see no reason to doubt the accuracy of this conclusion, and we concur in it. But the further opinion was expressed that the defendant Timothy having taken the note on an agreement to support the old gentleman, and without notice of the mistake, and having entered on the performance of that agreement, his position is that of *bona fide* purchaser, and as a consequence the note in his hands is not subject to the equity of complainant and cannot be changed in order to effect it. On this ground he dismissed the bill. From this conclusion we are compelled to dissent.

The nature of the title the defendant Timothy sets up must have been overlooked. The note was drawn in proper commercial form and was made payable to the order of James Sullivan. But no endorsement has been made and the defendant Timothy has never become endorsee. The paper has never been negotiated in commercial sense. Whatever title he has obtained is through a separate instrument purporting "to assign, sell, transfer and set over to said Timothy Sullivan a certain note of Charles Spinning now held by me," and containing a clause empowering the assignee to collect the money.

In case of the assignment of a *chose in action* not having the attribute of negotiability the assignee takes it subject to antecedent equities, and the late provision to permit assignees to sue in their own names has not affected the principle. *Myers v. Davis* 22 N. Y. 489.

But commercial paper having the quality of negotiability is privileged, and such of it as belongs to the class of bills of exchange and promissory notes may be transferred in such manner as to give the transferee a better right than was possessed by the party making the transfer. In case the new title is innocent and regular the law will protect it against prior equities and leave the latter to independent adjustment. But to have this effect the title must accord with the rules which give the immunity. Because if it does not and pursues simply the style and method allowed by the common law in the case of chattels, the right which follows

is no greater than would ensue if the paper was devoid of the character of negotiability, and such ownership as there is will be subject to pre-existing equities.

The title the defendant Timothy sets up is of this kind. The note was transferable by endorsement and was not transferred in that way but by assignment. He obtained no title to enable him to sue except in the name of the payee: *Redmond v. Stansbury* 24 Mich. 445; *Robinson v. Wilkinson* 38 Mich. 299; *Aniba v. Yeomans* 39 Mich. 171; and hence no title sufficient to preclude the maker from setting up equities coeval with the inception of the paper. *Gibson v. Miller* 29 Mich. 355; *Franklin Bank v. Raymond* 3 Wend. 69; *Hedges v. Sealy* 9 Barb. 214; *Muller v. Pondir* 55 N. Y. 329; *Trust Co. v. National Bank* 101 U. S. 68; *Moore v. Miller* 6 Oregon 254: 25 Am. 518; *Haskell v. Mitchell* 53 Me. 468; *Clark v. Whitaker* 50 N. H. 474: 9 Am. 286; *Lancaster Nat. Bank v. Taylor* 100 Mass. 18; *Whistler v. Forster* 14 C. B. (N. S.) 248.

The right to relief was made out and it should have been granted.

The decree must be reversed and one entered cancelling $473.08 of the note as of its date, and giving complainant his costs of both courts, and the case will be remanded for the necessary proceedings.

The other Justices concurred.