JOSEPH W. CALVIN *et al.* v. JAMES S. STERRITT.

1. NEGOTIABLE NOTE—*Indorsement and Transfer—Error.* A negotiable promissory note payable to "order" must be transferred by indorsement of the payee thereof to an innocent holder for value, before maturity, in order to invest the holder with the legal title thereto, and deprive the maker from pleading his equities and defenses; and in an action on. a promissory note, wherein a verified defense is pleaded, alleging that the payee never indorsed the note, and there is some evidence tending to show that it was without consideration, it is error for the trial court to direct the jury to return a verdict for the full amount of the note, with interest, without leaving their seats.

2. JURY — *Question of Fact.* The questions as to whether or not the payee made an indorsement, and whether or not there was no consideration for the note, being controverted questions of fact, should have been left to the jury to determine.

*Error from Cowley District Court.*

THE opinion states the case.

*J. F. McMullen,* for plaintiffs in error.
*Peckham & Henderson,* for defendant in error.

Opinion by SIMPSON, C.: The defendant in error commenced this action against the plaintiffs in error in the district court of Cowley county, in December, 1885, to recover on two promissory notes executed by the plaintiffs in error: one dated on the 7th day of June, 1883, for $132.50, payable in nine months, and one dated on the 9th day of June, 1883, payable in twelve months, for $132.50; both bearing 10 per cent. interest from date, and both payable to the order of John Thompson. It is alleged that Thompson indorsed them to John H. Broadus, and Broadus to the plaintiff, both indorsements being before maturity, and for value.

The plaintiffs in error answered: 1st. A general denial of everything alleged in the petition; 2d, that they did not receive any consideration for the making of said notes, and that the defendant in error knew of such want of consideration at

the time the notes were signed by them; 3d, they allege that these notes in suit were executed by them to take up two other certain notes of $125 each, each dated March 6, 1883, one payable January 1, 1884, and the other March 6, 1884, both bearing interest at the rate of 10 per cent. per annum, which notes were given to one Taylor Holbrook; that the consideration of the same was a pretended sale or assignment of an interest in a pretended patent right, to wit, the right, title and interest of Taylor Holbrook in certain letters patent from the government of the United States, bearing date September 1, 1868, and denominated "The Great Heat Economizer and Fuel Saver," numbered 81,714, for, to, and in the county of Chautauqua, state of Kansas; that said letters and said patent had expired at the time of said sale, and were wholly void and valueless for any purpose whatever; that said sale was felonious, fraudulent, and deceptive; that said two notes which were given were wholly without consideration and void; that the notes sued upon in this action have no other consideration, standing or basis than said two notes, and are therefore wholly without consideration and void — all of which the defendant in error knew at the time said notes were signed by the plaintiffs in error, and before he acquired any pretended interest in said notes; 4th, they repeat and incorporate the allegations of the second and third defenses as a part of this defense, and allege further, that the pretended invention covered by the letters patent numbered in the third defense, was without novelty or utility, and was not properly patentable, and was wholly valueless, and that the sale of the right of Chautuaqua county, state of Kansas, under said letters patent, was fraudulent and deceptive, and was the only consideration for the two notes in the third defense mentioned; that said two notes were the only consideration for the two notes sued on; and that all these things were known to the defendant in error before the notes sued upon were signed by these parties, and before he acquired any interest in said notes; 5th, they repeat and incorporate the allegations of the second, third and fourth defenses, and make them a part of this defense; and further allege that the

defendant in error is not the real owner of the notes sued upon, and is not the real party in interest as respects these notes; that one S. W. Phenix, of this county, is the actual owner of said notes, and that he has brought this action in the name of James S. Sterritt, who has no interest in said notes, to attempt to avoid the equities and defenses thereto; that the said Phenix at the time he became the owner of said notes, well knew the facts respecting their inception and making, and well knew all the facts set forth in these various defenses; 6th, they allege that John Thompson, the payee in the two notes sued on in this action, did not indorse said notes at any time, or receive any value for said notes from anyone, and that it is not true as alleged in each cause of action set forth in the petition, that John Thompson, the payee in said notes, indorsed the same for value. This defense is sworn to.

Trial was had at the January term, 1887. The trial court held upon the pleadings, that the burden of proof was on the defendant in error, who introduced evidence tending to prove the following: 1st, that the payee in the notes sued on, to wit, John Thompson, indorsed his name on the notes, and that they were transferred by said indorsement to one J. H. Broadus, and that the latter, for a valuable consideration, transferred said notes before their maturity to the plaintiff; 2d, that Broadus took said notes without knowledge of any of the defenses set up in the defendants' amended answer. Thereupon the plaintiff rested.

The defendants, to prove the issues upon their part, introduced evidence tending to show that the payee in the notes sued on, John Thompson, never indorsed said notes, and that the same were delivered to Broadus without the indorsement of the payee thereon; that at the time and place they were delivered to Broadus, he threatened the defendants that unless they made and delivered the notes sued on to him, he would cause proceedings to be taken to arrest one V. R. Woods, son-in-law of Joseph W. Calvin, one of the defendants, then in the state of Colorado, upon the alleged criminal charge of sell-

ing mortgaged property, the property mortgaged to secure the payment of the first notes referred to; the said Broadus based his demand upon the fact that he held the notes for which the notes in suit were executed in renewal. The defendants then introduced V. R. Woods as a witness, and he testified that he was the same person who executed the original notes, and was then asked, "What consideration did you receive for these notes?" This question was objected to, and the objection sustained. The defendants then offered to prove by this witness, and by other witnesses in the court-room, that the only consideration of the notes originally executed and of the notes sued upon, was the right to sell in Chautauqua county the worthless patent as hereinbefore stated, and that it appeared from the letters patent and from former deeds and assignments of them, that John H. Broadus had been the owner of said worthless patent right at one time, and that the written instrument showing that Broadus was a former owner, was in the possession of the witness V. R. Woods at the time he made and delivered the original notes, for which the notes sued on were given in renewal. The written instrument was included in the offer made. The court ruled that before the matters mentioned in said offer could be introduced in evidence by the defendants, they must first introduce evidence to show that Broadus had notice or knowledge of the things in said offer mentioned at the time he took the notes sued upon in this action from the defendants. This ruling was duly excepted to. The defendants' counsel then announced to the court that they relied upon the offer to prove that fact, and had no other evidence; whereupon the court ordered the jury to bring in, without leaving their seats, a verdict for the amount claimed in the plaintiff's amended petition. To this direction an exception was saved. A motion for a new trial was filed and overruled, and the ruling excepted to, and a judgment was rendered on the verdict.

It is the settled law of this state, that when negotiable promissory notes payable to "order" are transferred before

maturity by delivery merely, and not by indorsement, the assignee obtains merely an equitable interest in the notes, not the legal title thereto, and he must be prepared to meet all equitable defenses that may be set up against the notes, in the event he brings a suit to enforce their payment. (*McCrum v. Corby*, 11 Kas. 465; *Hadden v. Rodkey*, 17 id. 429; *The State v. Lee*, 32 id. 360; *Hatch v. Barrett*, 34 id. 223.) It is said in these cases that there is no statute in this state that authorizes a negotiable promissory note, payable to "order," to be transferred free from all or any equitable defenses or claims, except by indorsement. In this case the record recites that the plaintiff introduced evidence tending to show that Thompson, the payee in the notes, had made an indorsement; that the defendants introduced evidence tending to show that he had not made the indorsement. This disputed question should have been left to the jury, and the court erred in directing a verdict, if the makers of the notes had introduced or offered to introduce (and that offer was improperly rejected) evidence tending to prove that there was no consideration for the notes.

*1. Negotiable note, transferred by delivery, not by indorsement.*

*2. Question for jury.*

We are now to inquire whether the record shows any evidence of the want of consideration in the original notes. This statement is made upon the theory that the notes sued upon are renewals of the original notes given for the patent right. This is not only denied by counsel for the defendant in error, but even if it were true, they claim in their brief that the makers of the notes sued upon cannot plead want of consideration in the original notes, and hence in these notes, because they are not privy to the contract under which the original notes were executed. To state their contention more definitely, it is that the makers of the renewal note, who are strangers to the original note, or to the contract by which it was executed, cannot defend against the renewal note by proving a total failure of consideration of the original note. This does not seem to be the law. The general rule, as laid down in the text by Daniel in his work on Negotiable Instruments, is, that if the

consideration of the original note be illegal, a renewal of it will be open to the same objection and defense; (p. 163, § 163;) but if at the time the renewal was executed, the parties signing knew of the fraud in the original, they will be regarded as purging the contract of fraud, and cannot then plead it. The test, therefore, is knowledge or want of knowledge of fraud in the original at the time of the execution of the renewal, and not privity with the original contract under which the first note was executed.

While the test laid down in Daniel was not expressly mentioned in the case of *Geiger v. Cook*, 3 Watts & S. 266, yet·in that case there was a renewal of the original note, and action brought on it, and the court say:

"If, however, the consideration of the note now sued on was nothing else than the former note, and the former note was void for want of consideration, this was the only mode in which the defendant could show that the present note was without consideration."

This court, in the case of *Fraker v. Cullum*, 21 Kas. 551, say that—

"Where a note is executed by an accommodation-maker, and is afterward without his consent or knowledge materially altered by an indorsee and holder thereof, such note is thereby rendered invalid; and afterward, where such maker, without having any knowledge of such alteration, executes new notes in lieu of the altered one, such new notes are given without any sufficient consideration therefor, and except in the hands of an innocent holder for value, their payment cannot be enforced against the maker."

It is established, therefore, that in this state the condition upon which the defense can be made is want of knowledge of the illegality of the original note, when the renewal note is executed. Of course it must necessarily be that under certain circumstances the giving of a new note would preclude the party from denying the consideration of the old one, but we think that in this particular case evidence tending to show that there was no consideration for the original note, and hence none for the notes sued upon, ought to have been admitted. There

was evidence introduced, according to the recitations of the record, that the execution of the notes sued upon was induced by threats of Broadus to have the maker of the original notes arrested for the sale of property mortgaged to secure these notes, he being a kinsman of those who signed the renewal notes.  It is true that these threats of Broadus were not pleaded as a defense to the notes, but if true they establish the knowledge of Broadus respecting the inception of the original notes, and the consideration of the notes sued upon. This view is strengthened by the peculiar tactics of the defendant in error at the trial; he does not go on the witness stand and testify that he had no knowledge of the equities of the makers.  He contents himself by showing that he was a purchaser for value and before maturity, and then rests upon the presumption in his favor of want of knowledge of the defenses.  But he does offer evidence tending to show that Broadus had no knowledge of these defenses.  If he purchased for value before maturity without knowledge, the knowledge of Broadus would not affect his title to the notes.  The attitude in which the question is presented by the record seems conclusive that the makers ought to have been allowed to show by V. R. Woods, the maker of the original note, that there was no consideration for it, and that the original letters patent ought to have been received in evidence, because they show at one time that Broadus was the owner of the patent, and consequently had knowledge of their expiration by operation of law.  They were also entitled to prove that the patent was void for want of novelty and utility.  It has been decided by the court in several cases that a note given for such a patent is without consideration. (*National Bank v. Peck*, 8 Kas. 660; *McKee v. Eaton*, 26 id. 226.)  Enough was shown in this case, by evidence introduced and offered, to establish the fact that Broadus was the connecting link between the past transactions and the present arrangement.  He owned the letters patent before the execution of the original notes.  He was in possession of the original notes, at the time the notes sued upon were given, and surrendered them.  He induced the

execution of the renewal notes, and the defendant in error claims through his indorsement. All this shows a straight and unbroken line of obligation on the part of the makers of both the original and renewal notes to Broadus. (*Campbell v. Sloan*, 62 Pa. St. 481.) Counsel for defendant in error claim that the delivery of the original notes to the makers of the notes sued upon is a sufficient consideration to constitute the notes in controversy a valid obligation against these plaintiffs in error, and cite authorities establishing that proposition. We have examined them, and if there was any consideration for the original notes, they would be applicable; but we have found no case that so holds when there is a total failure of consideration of the original notes; when that appears, then other principles control.

As there was some evidence introduced tending to show that the payee in the notes sued upon did not indorse them; and as there was some evidence introduced tending to show that Broadus had knowledge of the equities and defenses of the makers, and other evidence offered to show his knowledge, and that there was want of consideration for the original notes; and as the plaintiffs in error ought to have been permitted to introduce other and further evidence on that question; and as all these things were matters to be determined by the jury, the trial court erred in excluding the evidence, and in its direction to the jury; and for these errors we recommend that the judgment be reversed, and the cause remanded with instructions to grant a new trial.

By the Court: It is so ordered.

All the Justices concurring.