DE HASS v. ROBERTS et al.

(Circuit Court, W. D. Pennsylvania. January 30, 1894.)

1. NEGOTIABLE INSTRUMENTS—WHAT CONSTITUTES.

A certain instrument made in the state of Kansas contained a promise to pay to K. or order, five years after date, a sum certain, with interest at 8 per cent., payable semiannually, as per annexed coupons; both principal and interest payable at K.'s bank, in Topeka. It recited that both "this note" and the coupons were to be construed by the laws of Kansas in every particular, and were secured by a mortgage on land, and provided that they should draw 12 per cent. interest after maturity; that in default of payment of any coupon the principal should become due, and the amount of such defaulted coupon should be added to the principal, and the whole bear interest at 12 per cent. *Held*, that this was a negotiable instrument.

**2. SAME—ASSIGNMENT—SUBSEQUENT INDORSEMENT.**
The payees of said instrument indorsed on it a transfer thus: "For value received, we hereby assign and transfer the within bond, together with all our interest in and rights under the same, without recourse," to J. D. *Held*, that this was not a commercial indorsement, but a mere assignment passing an equitable interest subject to the defenses of the makers; that the negotiability of the instrument was thereby destroyed, and the subsequent indorsement by the transferee did not make him liable for payment in the absence of any independent contract,—both transfers having been made in the state of Kansas. Iron-Works v. Paddock, 15 Pac. 574, 37 Kan. 510, followed.

At Law. On motion for judgment non obstante veredicto. Action by Elizabeth G. De Hass against John D. Roberts, as survivor of John Dibert and John H. Dibert, late partners as John Dibert & Co., on an obligation to pay money. Motion sustained, and judgment entered.

Shiras & Dickey, for plaintiff.
Robert S. Frazer, for defendants.

ACHESON, Circuit Judge. 1. The first reserved question of law is "whether, under the evidence, to wit, the writing sued on, the attached guaranty, and the mortgage securing said obligation,—the writing sued on dated the 15th day of June, 1867, for $3,000, payable to the order of John D. Knox & Co.,—is a negotiable commercial instrument." By this instrument, which was signed at Topeka, Kan., the makers, R. J. and Ida McFarland, promise to pay to John D. Knox & Co., or order, five years after date, the sum of $3,000, with interest at the rate of 8 per cent. per annum to be paid semiannually, as per annexed coupons; the principal and interest being payable at the banking-house of the payees, in Topeka, Kan.; the writing declaring that "this note" and the coupons "are made and executed under, and are to be construed by, the laws of the state of Kansas, in every particular," and are to draw 12 per cent. interest per annum after maturity, and that they are secured by a first mortgage on real estate, and providing that if any of the interest coupons shall not be paid at maturity the principal debt shall then become due, and the unpaid coupon first matured shall become a part of the principal, and the whole principal debt and first unpaid coupon shall bear interest at the rate of 12 per cent. per annum from the maturity of said coupon until paid. The "attached guaranty" is no part of the instrument, but a stipulation of a later date given by a third person upon the transfer of the note. It therefore has no bearing upon this particular question. The recited mortgage was given by the makers of the note to the payees, and is conditioned for the payment by the mortgagors as well as of the note and interest as of all taxes and assessments to be levied upon the mortgaged premises, and that the mortgagors shall keep the buildings insured and in good repair, and refrain from cutting timber or committing other waste, with a provision that in case of default in the payment of any taxes or assessments, if the holder shall so elect, the note shall immediately become due. It is a collateral security,—a contract distinct from the note, and not contravening any of its terms. As

it is the general rule that contracts are to be construed and governed by the law of the place where they are made and to be performed, the declaration contained in the paper in suit as to the controlling effect of the laws of Kansas in its construction only expresses what otherwise would have been implied. The precise question here raised was not involved in any of the decisions of the supreme court of Kansas brought to my attention. The instruments, which in Killam v. Schoeps, 26 Kan. 310, and Iron-Works v. Paddock, 37 Kan. 510, 15 Pac. 574, were held to be nonnegotiable, contained stipulations respecting the title and future disposition of the property which formed the consideration of the notes. They were not simply promises to pay money, but double contracts. We find, however, that it was decided in Seaton v. Scovill, 18 Kan. 433, that a stipulation to pay "reasonable attorney's fees if suit be instituted" does not destroy the negotiability of a promissory note; and in Parker v. Plymell, 23 Kan. 402, that a note otherwise negotiable is not rendered nonnegotiable by reason of the provision, "If this note is not paid at maturity, the same shall bear twelve per cent. interest from date." In Chicago Ry. Equipment Co. v. Merchants' Bank, 136 U. S. 268, 10 Sup. Ct. 999, it was declared by the supreme court of the United States that under the general mercantile law the negotiability of a promissory note is not affected by the provisions therein that the title to the personal property for which it was given should remain, as security, in the vendor, the payee of the note, until all the notes of a series to which it belonged were paid, and that the note should become due and payable to the holder on the failure of the maker to pay the principal or interest of any of the notes of the series. It was likewise ruled in Ernst v. Steckman, 74 Pa. St. 13, that a promissory note is negotiable if payable certainly at a fixed time, although made subject to a contingency whereby it may become due sooner; and in Bank v. Crowell, 148 Pa. St. 284, 23 Atl. 1068, that the negotiability of a note is not destroyed by a clause therein stating that it was accompanied by a collateral security, and how the latter might be sold by the holder of the note if not paid at maturity. In the absence, then, of any decision by the courts of Kansas to the contrary, I feel justified in holding that the writing here in question is a negotiable commercial instrument.

2. The second reserved question is "whether the indorsement of John Dibert & Co. after the assignment without recourse made by John D. Knox & Co., the payees, upon the writings sued on, pro ut same in evidence, made the said John Dibert & Co. liable as indorsers of negotiable commercial paper; the transfer from John D. Knox & Co. to John Dibert & Co., and the transfer by John Dibert & Co. to F. S. De Hass, having been made in the state of Kansas." The indorsed transfer by John D. Knox & Co. to John Dibert & Co., upon the note of June 15, 1887, for $3,000, is as follows: "For value received, we hereby assign and transfer the within bond, together with all our interest in and rights under the same, without recourse, to John Dibert & Co. John D. Knox & Co." Under this transfer is the indorsement: "Pay to the order of F. S. De Hass. John Dibert & Co." Then follows the indorsement: "Elizabeth G.

De Hass, Executrix of F. S. De Hass." Besides the note for $3,000, this suit embraces two of the coupons, and they have similar transfers indorsed upon them. The "attached guaranty" already mentioned is executed by the John D. Knox Land & Investment Company under date of 19th September, 1889, and purports to assign and transfer the said note to F. S. De Hass, and guaranties the collection of the principal and interest upon specified conditions. It is the settled law of Kansas that a negotiable promissory note, payable to order, can be transferred by the payee, so as to convey the legal title, only by an indorsement, in the technical or mercantile sense; any other form of transfer passing an equitable interest therein, merely, and leaving the note in the hands of the transferee subject to all equities, counterclaims, and defenses which the maker could assert as against the payee. McCrum v. Corby, 11 Kan. 464, 470; Hadden v. Rodkey, 17 Kan. 429; Briggs v. Latham, 36 Kan. 205, 210, 13 Pac. 129; Calvin v. Sterritt, 41 Kan. 215, 218, 21 Pac. 103. In Hatch v. Barrett, 34 Kan. 223, 8 Pac. 129, a writing on the back of a negotiable promissory note, payable to the order of J. C. Rogers, in these words: "I, James C. Rogers, do hereby assign the within note to Charles B. Hatch, of Osage county, Kansas. Said assignment is made without recourse to me, either in law or equity. J. C. Rogers,"—was held not to be an indorsement, in a commercial sense, and not to cut off the defense of the maker. The court there said:

"The alleged indorsement is clearly not in the usual or common form, but substantially different therefrom. The words of the indorsement, taken together, must be treated as only an assignment of the note. An assignee stands in the place of the assignor, and takes simply an assignor's rights, but the assignment of a note will not cut off the defenses of the maker."

These decisions of the supreme court of Kansas are conclusive here, but it is to be observed that they are in harmony with the rule of the law merchant. Story, Prom. Notes, § 120; Osgood v. Artt, 17 Fed. 575; Trust Co. v. National Bank, 101 U. S. 68, 71.

If, then, upon such an assignment, the legal title is left in the payee, a mere equitable interest passes to the transferee, and the note remains subject to all the defenses of the maker, it seems necessarily to follow that the negotiable character of the instrument is thereby utterly destroyed, for all the peculiar and distinguishing characteristics of negotiability are gone. This was ruled in Aniba v. Yeomans, 39 Mich. 171. Does the subsequent indorsement by the transferee of the note which has thus become nonnegotiable, in the absence of any other or independent special contract in relation to that indorsement, render him liable? Upon principle, it seems to me, the question should be answered negatively. Daniel, Neg. Inst. 666; Gray v. Donahoe, 4 Watts, 400; Wright v. Hart's Adm'r, 44 Pa. St. 454; Bank v. Piollet, 126 Pa. St. 194, 17 Atl. 603. This is the conclusion deducible from the case of Iron-Works v. Paddock, 37 Kan. 510, 15 Pac. 574, which was a suit against indorsers of a promissory note payable to order, but which the court held was nonnegotiable because of its peculiar provisions. Treating of the re-

sponsibility of the indorsers of a nonnegotiable note, the supreme court of Kansas there said:

"In Iowa the court held that an indorsement of a nonnegotiable note, or any other instrument of writing except negotiable paper, without the proof, oral or written, of an undertaking to become responsible in some manner for a good consideration, means nothing, and an indorser incurs no liability. Fear v. Dunlap, 1 G. Greene, 334. Daniel on Negotiable Instruments (709) says: 'If the note be not negotiable, it is plain that such party cannot be regarded as an indorser, for the simple reason that there is no such thing as an indorsement, in its strict sense, of any other than negotiable paper.' See, also, Graham v. Wilson, 6 Kan. 490. We are inclined to the latter view,—that the indorsement of a name upon a nonnegotiable note simply transfers the title of a party, and does not make him liable as if said note were a negotiable instrument. Story v. Lamb, 52 Mich. 525, 18 N. W. 248; Bank v. Gay, 71 Mo. 627. Such party guaranties the note to be genuine, and that it is what it purports to be; nothing more. He does not guaranty its payment, although he might do this; but to do so would take a contract, either expressed in the indorsement, or by an independent contract between the parties."

This seems to have been understood by the parties to the transaction here under consideration, for the assignment of the note by the John D. Knox Land & Investment Company to F. S. De Hass contained an express guaranty. The views of the supreme court of Kansas above quoted seem to be decisive of the second question of law reserved, and the ruling thereon must be favorable to the defendants.

3. The third reserved question relates to interest only, and, in view of the conclusion just stated, need not be considered.

The opinion of the court being with the defendants upon the second question of law reserved, in each case judgment will be entered in favor of the defendants non obstante veredicto.