IN THE

# Supreme Court of Judicature

OF THE

## STATE OF INDIANA,

### AT INDIANAPOLIS, NOVEMBER TERM, 1900, AND MAY TERM, 1901, IN THE EIGHTY-FIFTH YEAR OF THE STATE.

FIRST NATIONAL BANK OF HUNTINGTON *v.*
HENRY ET AL.

[No. 18,796.   Filed December 19, 1900.]

SPECIFIC PERFORMANCE.—*Bills and Notes.*—*Indorsement.*—*Service by Publication.*—*Jurisdiction.*—In an action on a note which was delivered to plaintiff as collateral security for a loan, and by mutual mistake and inadvertence was not indorsed, plaintiff is not entitled to an order of court for the indorsement of the note, where it is shown that the payee was a non-resident and was brought into court only by constructive notice. *pp. 2-8.*

BILLS AND NOTES.—*Transfer.*—*Indorsement.*—*Defense.*—In an action on a note payable in a bank in this State, transferred to plaintiff before maturity, without indorsement, the maker may interpose the defense of no consideration as a bar to plaintiff's right of recovery. *pp. 8-10.*

SAME.— *Consideration.*—*Transfer.*— *Indorsement.*— Defendant executed a note and mortgage to a bank to secure the bank for his indebtedness and for future advances, under an agreement that the bank should hold the note and mortgage, and that defendant's account should be balanced from time to time and notes executed by defendant in settlement of the balances. Defendant afterward paid the amount due at the time of the execution of the note and mort-

gage, and executed notes for advances, made in accordance with the agreement. The bank assigned the mortgage note to plaintiff before maturity, without indorsement, and plaintiff brought suit thereon. *Held,* that there was no consideration for the note in suit, and plaintiff could not recover. *pp. 11, 12.*

From the DeKalb Circuit Court. *Affirmed.*

*J. B. Kenner, U. S. Lesh* and *J. S. Slick,* for appellant.
*A. A. Adams, D. M. Link, T. R. Marshall, W. F. Mc-Nagny* and *P. H. Clugston,* for appellees.

BAKER, J.—On June 24, 1895, appellant filed in the Whitley Circuit Court a complaint in one paragraph against appellees John C. Henry and his wife Sadie Henry and against one James Arnold. The complaint charged that on June 14, 1892, Henry executed his note for $8,000 payable three years after date to Arnold or order at a bank in this State; that, on the same day, to secure the payment of the note, Henry and his wife executed to Arnold their mortgage of Henry's real estate in Whitley county; that on June 16, 1894, Arnold pledged the note and all rights under the mortgage to appellant as collateral security for large loans of money obtained by Arnold from appellant; that the condition of the pledge was that if any part of Arnold's debt to appellant remained unpaid when the Henry note fell due appellant was to collect the Henry note and apply the proceeds as far as necessary to the payment of Arnold's debt; that $15,000 of Arnold's debt to appellant remains unpaid; that the Henry note is due and unpaid; that Arnold is made a party defendant to answer as to his interest in the note. With the complaint appellant filed an affidavit that Arnold had become and was a non-resident of the State and that the object of appellant's suit was to enforce a lien on land within the State. On this affidavit an order was issued and publication of notice was made. Henry and Henry personally appeared. The cause was sent on change of venue to the DeKalb Circuit Court. In that court appellees Galbreath and Foust, on their application, were admitted as

parties defendant. Henry, Galbreath and Foust filed separate affirmative answers, seeking to avoid payment of the note to appellant by reason of matters that they claimed would be available against Arnold if he had remained the holder of the note. Thereupon, on December 28, 1896, appellant by leave of court filed a second paragraph of complaint. This paragraph differs from the first only by reason of the addition of the following averments: That appellant took the note from Arnold as a pledge without actual notice of any defenses; that it was the agreement between appellant and Arnold that Arnold should indorse the note to appellant, but that by inadvertence and mutual mistake the note was delivered to appellant by Arnold without indorsement; that appellant failed to notice that the note was not indorsed until after the maturity thereof; that thereupon appellant at once sought to have Arnold indorse the note, but found that he had left for parts unknown; and that Arnold has since remained away. Henry, Galbreath and Foust filed affirmative answers to the second paragraph of complaint similar to their answers to the first paragraph. Appellant's demurrers to the answers were overruled. Reply in denial. Trial by court. Special finding of facts and conclusions of law. Motions for a *venire de novo,* for a more specific statement of the conclusions of law, and for a new trial, were overruled. On these various adverse rulings the assignments of error are predicated.

The first alleged error is the overruling of appellant's demurrer to the answer of no consideration, addressed to the second paragraph of complaint. Appellant presents two questions under this assignment: (a) Is appellant entitled to a correction of the mistake and an order for the indorsement of the note by James Arnold? (b) If appellant is entitled to such relief, will the indorsement relate back to the time it was to have been made or take effect only at the time actually made?

It is unnecessary to determine whether or not, on the facts

stated in the second paragraph of complaint, appellant would have been entitled to an order for the indorsement of the note by Arnold, if the court had had jurisdiction of the person of Arnold. In seeking to enforce Arnold's agreement to indorse the note, appellant was pursuing a remedy *in personam.* It was not alleged that Henry or Galbreath or Foust was a party to or had notice of Arnold's agreement to indorse. The part of the complaint that attempted to show a right to specific performance of the contract was aimed at Arnold alone. The contract was personal to Arnold alone and called only for the performance of a personal act by him. On the foundation that appellant was entitled to an order for specific performance against Arnold, the complaint sought to build up a right in appellant against the other defendants to recover on the note as commercial paper, indorsed by the payee, before maturity, in due course, to an innocent purchaser, for value. But appellant was not entitled to the order because the record on its face showed that the court did not have and could not have jurisdiction of the person of Arnold. Not only did the second paragraph of complaint disclose that Arnold was not within, and could not be brought by personal service within, the jurisdiction of the court, but the record already before the court revealed that Arnold, on proper affidavit of non-residency, had been brought in only by constructive service. The statutes of this State authorize constructive service upon non-residents only in certain cases, of which a case for specific performance is not one. In *Edwards* v. *Mc-Clave,* 55 N. J. Eq. 151, 35 Atl. 829, the holder of a note negotiable under the law merchant brought a suit in equity against the administrator and heirs of the deceased maker and against the payee. The bill disclosed that the note, payable to the payee or order, was executed without consideration, but that the holder acquired the note from the payee, by delivery, before maturity, for value, and without notice of any defenses; and that at the time of delivery,

it was the intention of the payee and of the purchaser that the note should be indorsed by the payee, but that this was neglected by mistake. On grounds unneccessary to notice here, it was held that the bill was without equity as against the heirs of the maker. In regard to the equity of the bill as against the administrator of the maker's estate and the payee of the note, the court said: "If the court cannot decree specific performance of the contract to indorse, it cannot, as it seems to me, decree a liability against the maker, as if the note were indorsed. If this view be correct, the complainant's bill must fail against the administrator, for the reason that it discloses that no such decree can be rendered against E. Wilkes McClave, the payee, because he is not within the jurisdiction of the court, and the bill states that he cannot be brought within its jurisdiction, and the decree for payment without indorsement is prayed. A decree for indorsement of the note made against the payee upon publication and without obtaining jurisdiction over his person, would be without due process of law under the fourteenth amendment of the federal Constitution as construed in *Pennoyer* v. *Neff*, 95 U. S. 714, 24 L. Ed. 565. It appearing, therefore, by the bill itself, that the contract which lies at the basis of the whole proceeding, viz., the personal contract of E. Wilkes McClave to indorse the note, cannot be enforced by reason of the want of jurisdiction over his person, I am of the opinion that no decree against the administrator can be made upon the bill." In 1 Daniell's Ch. Pl. & Pr. (6th Am. ed.), *550, the author states the proposition thus: "Where it appears on the face of the bill that the defendants were, at the time of the institution of the suit, residents in a foreign country, and that the suit does not relate to any of the subjects in respect of which the court is warranted in exercising jurisdiction against persons so resident, a demurrer for want of equity will be allowed." Mr. Daniell's text is amply supported by the cases of *Cookney* v. *Anderson,* 31 Beav. 452; *Cookney* v.

*Anderson,* 1 DeGex. J. & S. 365; *Foley* v. *Maillardet,* 1 DeGex. J. & S. 389; *Samuel* v. *Rogers,* 1 DeGex. J. & S. 396; *Stephenson* v. *Davis,* 56 Me. 73; *Spurr* v. *Scoville,* 57 Mass. 578; *Erickson* v. *Nesmith,* 46 N. H. 371. In *Cookney* v. *Anderson,* it was decided (1) that constructive service will not confer jurisdiction unless the suit relates to a subject in respect of which constructive service is authorized by statute, and (2) that the subject of the suit then before the court was not within the class in which constructive service was warranted. The second point was overruled in *Drummond.* v. *Drummond,* L. R. 2 Ch. App. 32, but the first stands. Now, in the present case, the holder and the maker of the note were before the court; but the payee was not, except to answer as to the foreclosure of the mortgage securing the note, and possibly as to his interest in the debt evidenced by the note. (See *Nelson* v. *Johnson,* 18 Ind. 329, and *Swingle* v. *Bank,* 41 Ind. 423.) In that situation, the court could proceed and determine the rights between the holder and the maker with respect to the note as it appeared in the hands of the holder. But how could the court establish a new and independent contract on the part of the absent payee—the contract of an indorser? And with what justice could the court hold the maker upon the note as if it was indorsed in accordance with the payee's alleged agreement to indorse,. without hearing the payee in reference to the existence or validity of such an agreement? If the court, in the absence of the payee, should determine as between the holder and the maker that the note should have been indorsed and should therefore be treated as having been indorsed, the maker would have to pay the note, although he had paid the debt to the payee before notice of the assignment; and then on his action against the payee he might be defeated by the payee's showing that there never had been any agreement to indorse. Manifestly, the rights of the holder and of the maker, in respect to the alleged agreement to indorse, are

not severable from those of the payee.   In *Mallow* v. *Hinde,* 12 Wheat. 193, 6 L. Ed. 599, appellants held a deed for land, survey No. 537, from one Langham.   Langham derived his rights from executory contracts with the Beards. Appellees obtained the legal title through the source from which appellants held their equitable title.   Appellants charged that appellees took the legal title with full notice of appellants' equitable claim.   The Beards were not in court. · The court said: "For the appellees, it is insisted, that the proper parties are not before the court, so as to enable the court to decree upon the merits of the conflicting claims.   And we are all of that opinion.   It is plain, that the appellants cannot set up the survey No. 537, against the appellees' title, without first showing themselves entitled to that survey.   They claim that survey, not by any assignment, or other instrument, investing them with a legal right to it, but by executory agreements, the validity and obligation of which the parties to them have a right to contest.   We cannot try their validity, and decide upon their efficacy, by affirming they confer upon the appellants an equitable right, without manifest prejudice to the rights of those not before the court.   The complainants can derive no claim in equity to the survey, under or through Langham's executory contracts with the Beards, unless these contracts be such as ought to be decreed against them specifically by a court of equity.   How can a court of equity decide that these contracts ought to be specifically decreed, without hearing the parties to them ?   Such a proceeding would be contrary to all the rules which govern courts of equity, and against the principles of natural justice.   *   *   *   In this case, the complainants have no rights separable from, and independent of, the rights of persons not made parties. · The rights of those not before the court lie at the very foundation of the claim of right by the plaintiffs, and a final decision cannot be made between the parties litigant, without directly affecting and prejudicing

the rights of others, not made parties." This principle was affirmed and applied in *Findley* v. *Hinde,* 1 Pet. 241, 7 L. Ed. 128, in which it was held that a vendor by title-bond was a necessary party to a bill for specific performance, although he had parted with all title and his grantees (the defendants) were alleged to have had full notice of the prior sale. To the same effect are the cases of *Shields* v. *Barrow,* 17 How. 129, 15 L. Ed. 158; *Crane* v. *Chicago, etc., R. Co.,* 20 Fed. 402; *Chadbourn* v. *Coe,* 45 Fed. 822; *Davis* v. *Davis,* 89 Fed. 532; *Spear* v. *Campbell,* 4 Scam. (Ill.) 424. It results from the foregoing considerations that the answer to appellant's first question must be in the negative. And since appellant was not entitled to an order for the indorsement of the note by Arnold, it is not necessary to consider the effect of such order or of an indorsement thereunder. With the specific performance part of the second paragraph of the complaint out of the way, the second paragraph is narrowed to the limits of the first.

. The question therefore comes to this: Is the answer of no consideration a bar to appellant's right of recovery upon the note, taken without indorsement? By the statutes of this State, only such promissory notes as are made payable at some bank in the State are negotiable under the law merchant. The statutes also provide that an assignee without indorsement may maintain an action in his own name by making his assignor a party defendant to answer as to his interest in the debt. §§277, 7515-7520 Burns 1894, §§276, 5501-5506 R. S. 1881 and Horner 1897. The parties agree, and correctly so, that the general law merchant is in force in this State, except that domestic promissory notes not payable at a bank within the State are not negotiable according to the custom of merchants, and except that an equitable assignee may maintain an action at law in his own name. The note of Henry to Arnold or order was made payable at a bank within the State. The effectiveness of the answer of no consideration

is therefore to be determined by the law merchant. Appellant's counsel state their argument thus: "Whether or not an obligation is commercial paper depends upon its very terms when it is executed. If, when it is executed, a promissory note is payable to order in a bank in this State, then it is commercial paper. Nothing that can happen to that kind of paper after it is executed can unmake it or make it non-commercial. Failure to indorse it may occur in its transfer, or it may not be paid on presentation when due, but neither of these things happening afterwards can change its character or deprive it of its name. * * * The note in suit, being commercial paper in its incipiency, was such when delivered to appellant, although not indorsed, and has always continued the same, having been neither reborn nor rechristened." The argument proves too much. It proves, for example, that if the payee should remain the holder of the note, and if the maker should pay the payee in full without receiving possession of the note, the payee's subsequent action as holder could not be barred by the "after-event" of payment because the note was "commercial paper in its incipiency". The misapprehension arises from a failure to distinguish between "negotiable" and "negotiated". If one owes another, good conscience is satisfied if the debtor pays the debt once, whether the creditor holds many evidences of the obligation or none. If the creditor holds several evidences, good conscience requires the cancelation of them all, or damages from the creditor, if the debtor pays once without notice of intervening rights of third persons. Negotiable and non-negotiable notes are both choses in action. The general rule is that all choses in action may be assigned, but the debtor may deal with his original creditor as his continuing creditor until notified of the assignment. This is but a particular statement of the broader general proposition that a grantor can not convey a better title than he himself had. But public policy has created several legal exceptions, of which the law relative to

the transfer of negotiable instruments according to the custom of merchants is one. The assignee of a non-negotiable chose in action obtains only an equitable title, equity charges him with notice, and he can not avail himself of the legal exception because he has no legal title. A negotiable note possesses "from its incipiency" until maturity the quality of negotiability; but, if it is not negotiated in due course of trade, equities are not cut off. If the payee brings the action, he stands before the court simply as an ordinary creditor. If the payee holds the note until after maturity, the fact of dishonor is notice of equities to a subsequent indorsee. To enable a transferee of negotiable paper to compel a second payment by the maker, he must bring himself within the legal exception by showing legal title, and this can not be had without indorsement before maturity. These propositions are thoroughly settled. *Elliott* v. *Armstrong,* 2 Blackf. 198; *Green* v. *Louthain,* 49 Ind. 139; *Foreman* v. *Beckwith,* 73 Ind. 515; *Andrews* v. *McCoy,* 8 Ala. 920, 42 Am. Dec. 669; *Hays* v. *Plummer,* 126 Cal. 107, 58 Pac. 447; *Simpson* v. *Hall,* 47 Conn. 417; *Benson* v. *Abbott,* 95 Ga. 69, 22 S. E. 127; *Warren* v. *Stoddart* (Idaho), 59 Pac. 540; *Shinn* v. *Fredericks,* 56 Ill. 439; *Bank* v. *Strang,* 72 Ill. 559; *Clark* v. *Callison,* 7 Ill. App. 263; *Franklin* v. *Twogood,* 18 Iowa 515; *Calvin* v. *Sterritt,* 41 Kan. 215, 21 Pac. 103; *Bowman* v. *Halstead,* 2 A. K. Marsh (Ky.) 200, 12 Am. Dec. 380; *Pavey* v. *Stauffer,* 45 La. Ann. 354, 12 South. 512, 19 L. R. A. 716; *Haskell* v. *Mitchell,* 53 Me. 468, 89 Am. Dec. 711; *Allum* v. *Perry,* 68 Me. 232; *Lancaster Nat. Bank* v. *Taylor,* 100 Mass. 18, 97 Am. Dec. 70, 1 Am. Rep. 71; *Gibson* v. *Miller,* 29 Mich. 355, 18 Am. Rep. 98; *Spinning* v. *Sullivan,* 48 Mich. 5, 11 N. W. 758; *Patterson* v. *Cave,* 61 Mo. 439; *Doll* v. *Hollenbeck,* 19 Neb. 639, 28 N. W. 286; *Haydon* v. *Nicoletti,* 18 Nev. 290, 3 Pac. 473; *Boody* v. *Bartlett,* 42 N. H. 558; *Clark* v. *Whitaker,* 50 N. H. 474, 9 Am. Rep. 286; *Hedges* v. *Sealy,* 9 Barb. (N. Y.)

214; *Gilbert* v. *Sharp,* 2 Lans. (N. Y.) 412; *Muller* v. *Pondir,* 55 N. Y. 325, 14 Am. Rep. 259; *Goshen Nat. Bank* v. *Bingham,* 118 N. Y. 349, 23 N. E. 180, 7 L. R. A. 595, 16 Am. St. 765; *Miller* v. *Tharel,* 75 N. C. 148; *Bresee* v. *Crumpton,* 121 N. C. 122, 28 S. E. 351; *Massachusetts, etc., Co.* v. *Twichell,* 7 N. Dak. 440, 75 N. W. 786; *Kyle* v. *Thompson,* 11 Ohio St. 616; *Davis* v. *Sittig,* 65 Tex. 497; *Huntington* v. *Lombard,* 22 Wash. 202, 60 Pac. 414; *Terry* v. *Allis,* 16 Wis. 478; *Galusha* v. *Sherman,* 105 Wis. 263, 81 N. W. 495, 47 L. R. A. 417; *Bank of Chadron* v. *Anderson,* 6 Wyo. 518, 48 Pac. 197; *Osgood* v. *Artt,* 17 Fed. 575; *DeHass* v. *Roberts,* 59 Fed. 853; *Lyons, Potter & Co.* v. *Bank,* 85 Fed. 120, 29 C. C. A. 45; *Harrisburgh Trust Co.* v. *Shufeldt,* 87 Fed. 669, 31 C. C. A. 190; *Central Trust Co.* v. *Bank,* 101 U. S. 68, 25 L. Ed. 876; *Whistler* v. *Forster,* 4 Eng. R. C. 332, 14 C. B. (N. S.) 248.

Errors are assigned upon the overruling of appellant's demurrer to the separate affirmative answers of Henry, Galbreath, and Foust. These answers are practically identical, and show the following facts: At the time of the execution of the note and mortgage in suit, Arnold was the manager of the banking firm of Arnold & Co., and Henry owed the bank $2,500 evidenced by his note then held by the bank. Henry desired to arrange for further loans and advances from the firm. The firm were unwilling to extend further credit except on the condition that Henry should secure the firm for his present and future indebtedness. It was thereupon agreed that Henry should execute the note and mortgage in suit to secure the firm for his present indebtedness by note and for future advances; that the note and mortgage in suit should remain in the possession of the firm; that from time to time Henry's account with the firm should be balanced; and that, for balances due, Henry should execute to the firm his promissory notes, which, according to the understanding, would be protected by the

mortgage. In settlement of balances, Henry executed to the firm two promissory notes for $2,000 each, payable at their bank. Henry paid the $2,500 note to the firm. The firm, through Arnold, for value and before maturity, indorsed one of the $2,000 notes to Galbreath and the other to Foust, representing to them that the two notes were the first obligations secured by the mortgage in suit. Galbreath and Foust in good faith relied and acted upon the representations. Henry paid his indebtedness to the firm in full. Galbreath and Foust foreclosed the mortgage in suit as security for the two $2,000 notes. Henry has made payments upon their decrees. All of the foregoing events occurred before Henry or Galbreath or Foust had any notice of the transfer of the note in suit.

Under these facts there was no consideration for the $8,000 note in suit. Henry received nothing at the time. The firm held his note for the $2,500 he already owed. For future advances under the mortgage, he was to execute his notes from time to time, and he did so. The mortgage to Arnold was executed as an indemnity to the firm on the firm's claim against Henry; and the $8,000 note to Arnold was simply duplicate evidence (and that only to the extent of actual indebtedness to the firm) which was to be held until the debt was paid, and then surrendered. "Parol evidence is admissible to show the true character of a mortgage, and for what purpose and what consideration it was given. Although it is for a definite sum, and secures the payment of notes for definite amounts, it may be shown that it is simply one of indemnity, or for future advances." 1 Jones Mortg. §384; *Mayer* v. *Grottendick,* 68 Ind. 1; *Bodkin* v. *Merit,* 86 Ind. 560; *Simmons Hardware Co.* v. *Thomas,* 147 Ind. 313; *Central Trust Co.* v. *Bank,* 101 U. S. 68, 25 L. Ed. 876. As these answers state a defense that would have barred a recovery on the note in the hands of Arnold, the demurrers of appellant as the equitable assignee of Arnold were properly overruled.

First Nat. Bank *v.* Henry.

The court found specially the facts set forth in the affirmative answers of Henry, Galbreath and Foust, and further that Arnold had never been served with process and had not appeared in person or by attorney and had had no notice of the pendency of the suit except by publication based on the affidavit filed with the first complaint. As conclusions of law the court stated that appellant was not entitled to recover against any of the appellees and that appellees were entitled to a judgment for costs against appellant. The exceptions to the conclusions of law present only the questions that have been decided on the pleadings.

The motion for a *venire de novo* was properly overruled. Maybe the finding is defective and uncertain in reference to the alleged contract of indorsement; but that matter was not before the court for decision. The finding states specifically the facts alleged in the complaint, except as to the contract for indorsement, and also the facts counted on in the affirmative answers of Henry, Galbreath and Foust. These findings are full and certain, and on them a judgment could be definitely based.

The motion to require a more specific statement of the conclusions of law (if such a motion is proper) can not be considered because it is not in the record by bill of exceptions.

The evidence is sufficient to support the findings. The legal effect of the evidence has been determined in passing on the pleadings. These two are the only questions presented under the assignment that the court erred in overruling the motion for a new trial.

Judgment affirmed.