## BELK ET AL. *v.* FOSSLER ET AL.

[No. 6,973. Filed October 6, 1911. Rehearing denied December 13, 1911. Transfer denied January 12, 1912.]

1. PARTIES.— *Vendor and Purchaser.— Mortgages.*— All vendors, purchasers and mortgagees of a lot, directly or contingently liable on their deeds, contracts of sale, and mortgages, are proper parties to a suit by a subsequent mortgagee for a foreclosure. p. 251.

2. VENDOR AND PURCHASER.—*Assumption of Payment of Mortgage. —Subrogation.*—Where a purchaser agrees, as a part of the purchase price of the purchased land, to pay an existing mortgage, subsequent purchasers and mortgagees are subrogated to the benefit of such agreement, though it causes a second mortgage to become a first mortgage on the land. p. 251.

3. VENDOR AND PURCHASER.—*Assuming Payment of Mortgage.— Purchase and Assignment of Mortgage.—Mortgagor.*—Where a purchaser of mortgaged land agreed, as a part of the purchase price of the conveyance, to pay the mortgage, and he subsequently and after the maturity of the mortgage, purchased such mortgage and assigned it to a third person, such person cannot enforce it as superior to the rights of the holder of a second mortgage existing at the time of such assignment, or as against one holding a contract of sale executed by such assignor before his assignment of such mortgage, where such assignor agreed to pay such first mortgage, the mortgage estate merging into the fee simple. pp. 252, 253.

4. ESTATES.—*Merger.—Mortgages.—Equity.*—Equity does not permit the merging of estates where, to do so, would work substantial injustice. p. 252.

5. ESTATES.—*Merger.—Intention.—Mortgages.*—Where the owner of the fee-simple title to land pays, and takes an assignment of a mortgage which he has agreed to pay as a part of the purchase price of the land, a merger of the lesser into the greater title occurs regardless of his intention. p. 253.

6. APPEAL.—*Weighing Evidence.*—The Appellate Court will not weigh conflicting oral evidence. p. 254.

From Cass Circuit Court; *John S. Lairy,* Judge.

Suit by Charles Fossler and another against Tacey B. Belk and others. From a decree for plaintiffs, Tacey B. Belk and certain other defendants appeal. *Affirmed.* For opinion on motion to dismiss appeal, see 42 Ind. App. 480.

*Frank E. Guthrie* and *Charles E. Hale,* for appellants.
*George W. Funk, Myers & Yarlott* and *Antrim & McClintic,* for appellees.

MYERS, J.—From the numerous pleadings in this case we take the following facts: On September 7, 1899, appellant Sarah J. Smith was the owner of a certain lot in Logansport, Indiana, and on that day, her husband joining, she mortgaged it to William S. Danes, to secure the payment of a note for $300, due three years after date. This mortgage was recorded in the office of the recorder of Cass county, September 8, 1899. On October 9, 1901, Mrs. Smith and her husband, in exchange for other real estate, conveyed said lot by warranty deed to James C. Cockburn. On July 21, 1902, said Cockburn conveyed said lot by warranty deed to Tacey B. Belk. On October 7, 1902, said Belk executed to appellees a mortgage on said lot, to secure the payment of a note for $575, due in three years. On June 24, 1903, said Belk reconveyed said lot to Cockburn. Neither of said deeds made any reference to either of said mortgages. In appellees' complaint, and in the separate answer and cross-complaint of Belk, and in the separate answer and cross-complaint of Bertha Bird, it is shown that as a part of the consideration for the transfer of the lot by Smith to Cockburn, and as a part of the consideration for the reconveyance of the lot by Belk to Cockburn, the latter assumed and agreed to pay the Danes note and mortgage. On January 7, 1905, Danes assigned the note for $300 and the mortgage held by him to Cockburn, who, on January 16, 1905, for full value—$300—assigned them to appellant Clarissa A. Lovejoy. On September 2, 1903, Cockburn entered into a written contract with Bertha Bird

for the sale of said lot to her, and, pursuant to said contract, she took possession of the lot, and alleges that she had performed all the conditions of that contract on her part. Said contract was never recorded in the office of the recorder of Cass county. The value of the lot does not exceed $700.

Appellees brought this suit against appellants to foreclose the mortgage held by appellees, and to cancel the mortgage held by appellant Lovejoy. Lovejoy answered the complaint, and by a cross-complaint making Danes a party defendant she sought to foreclose the mortgage so assigned to her, and to have it declared a lien on the lot superior to that asserted by appellees or either of her codefendants.

The issues joined on the complaint and the several cross-complaints were submitted to the court for trial, resulting in a finding in favor of appellees upon their complaint, and against all of the defendants thereto. Also in favor of Belk and Bird on their several cross-complaints, and against Lovejoy on her cross-complaint. A decree was entered in accordance with the findings.

Lovejoy's motion for a new trial was overruled and this ruling, and the rulings on the demurrer to each paragraph of appellees' complaint, to the cross-complaints of Belk and Bird, to the second, third and fourth paragraphs of appellees' answer to appellant Belk's cross-complaint, and to the second and third paragraphs of Belk's answer to Lovejoy's cross-complaint, are made the basis for a separate assignment of error by appellant Lovejoy.

The theory of the Fosslers, Belk and Bird is that Cockburn was the owner of the mortgagor's equity in the lot at the time the note and mortgage he agreed to pay were assigned to him, and therefore the law merged the mortgage estate in the fee simple. Also, that when the note and mortgage were assigned to Lovejoy, they were past due, and in her hands subject to all infirmities and to all defenses.

It is the theory of Lovejoy that the records affirmatively

contradict the theory of merger, and as she had no notice of the alleged agreements of Cockburn to pay the Danes mortgage as part consideration for the lot, she was protected as an innocent purchaser.

As against the separate affirmative answers and cross-complaints of Belk and Bird, it is first insisted that neither shows that the pleader had any interest in the matter in controversy. Appellees sought to foreclose their mortgage securing the payment of a note executed by Belk, and it is shown that the lot is not worth enough to satisfy the note for $300 and the debt to appellees. The note and mortgage when assigned to Lovejoy were past due, and Belk pleads facts showing that Cockburn agreed to pay this debt as a part of the consideration for the retransfer of the lot to him. It is also shown that in the exchange of lots with Smith, Cockburn agreed to pay the Danes's mortgage as a part of the consideration for that transaction. Bird shows that she is in possession of the lot under a contract of purchase from Cockburn, who is insolvent, and that she has complied with all of the terms of the contract on her part. A mere statement of the facts shows an interest, which, under the settled practice, entitled them to have their rights adjusted in one suit.

It is argued that Lovejoy had no knowledge of the alleged agreements of Cockburn to pay the Danes's paper, and that the preservation of the lien of the Danes's mortgage in her favor would not work a hardship on either of the other parties, for the reason that their position would not be changed from that occupied by them at the time of the execution of the mortgage by Belk. We cannot agree with this contention, for if Cockburn agreed to pay the Danes's mortgage as a part of the purchase money for the lot, and he actually complied with that agreement, all parties in interest were entitled to the benefit of that payment, even though it advanced the second mortgage to first place. Note to *American Bond Co.* v. *National*

*Mech. Bank* (1903), 99 Am. St. 466, 525. Lovejoy is claiming to have the senior mortgage on the lot, but her rights in this respect do not excel those enjoyed by Cockburn when he assigned the note and mortgage to her. If Cockburn had been the senior mortgagee, and had become the owner of the fee to the mortgaged land, we might have a question greatly different from the one before us. But here Lovejoy's assignor was not only the owner of the fee, but at the same time liable primarily for the payment of the debt secured by the mortgage. Payment of the debt by him under such circumstances discharged it, and circuitous means, such as having the note and mortgage assigned to him, did not keep it alive. This rule is founded on the theory that the land is the primary fund for the payment of the charge, which if paid off by the principal debtor extinguishes it. 2 Pomeroy, Eq. Jurisp. (3d ed.) §797; *Shirk* v. *Whitten* (1892), 131 Ind. 455; *Springer* v. *Foster* (1901), 27 Ind. App. 15; *Ritter* v. *Cost* (1884), 99 Ind. 80; *Klippel* v. *Shields* (1883), 90 Ind. 81; *Carlton* v. *Jackson* (1877), 121 Mass. 592.

Under the pleaded facts in this case, the fee simple and the mortgage estate met in the same person, in the same right, and, under the inflexible rule of law, the mortgage estate merged in the fee simple. *Shirk* v. *Whitten, supra.* The assignment of the note and mortgage to Cockburn would be evidence tending to show his intention, which is an important fact in determining the question of merger, but if he was the primary debtor, there is no equity which would keep the charge alive whatever might be his intention or the form of their transfer. *Shirk* v. *Whitten, supra;* 2 Pomeroy, Eq. Jurisp. (3d ed.) §797; *Klippel* v. *Shields, supra.*

It may be said that equity does not favor a merger, and will prevent it when to do so will save the parties to the transaction from injury. It is said in 2 Pomeroy, Eq. Jurisp. (3d ed.) §794: "Equity will never allow a merger to be prevented and a mortgage or other se-

curity to be kept alive, when this result would aid in carrying a fraud or other unconscientious wrong into effect, under the color of legal forms. Equity only interposes to prevent a merger, in order thereby to work substantial justice." See, also, *Swatts* v. *Bowen* (1895), 141 Ind. 322.

As to Cockburn, it is clear that the note and mortgage were extinguished, and being extinguished, his assignment to Lovejoy would not keep them alive or confer upon Lovejoy any right which could be the basis for any valid proceeding. *Klippel* v. *Shields, supra; Winans* v. *Wilkie* (1879), 41 Mich. 264, 1 N. W. 1049. The character of the paper as to negotiability is immaterial, for the reason that it was long past due when received by appellant Lovejoy, and, therefore, in her hands subject to all infirmities and to all defenses existing at the time she received it. *Green* v. *Louthain* (1874), 49 Ind. 139; *Stoy* v. *Bledsoe* (1903), 31 Ind. App. 643; *Rosenthal* v. *Rambo* (1905), 165 Ind. 584, 3 L. R. A. (N. S.) 678; *Wolf* v. *Shelton* (1902), 159 Ind. 531; *First Nat. Bank* v. *Henry* (1900), 156 Ind. 1; *Lipsmeier* v. *Vehslage* (1886), 29 Fed. 175. See, also, note to *Young Men's, etc., Gymnasium Co.* v. *Rockford Nat. Bank* (1899), 46 L. R. A. 753. There was no error in the rulings of the court on the several demurrers.

Lovejoy, in support of her motion for a new trial, contends that the decision of the court was not sustained by sufficient evidence, and was contrary to law. In this connection it is argued that while the legal ownership of the land, as well as the ownership of the note and mortgage held by appellant, were at the same time vested in Cockburn, there could be no merger, for the reason there is no evidence showing any intention on the part of such owner to merge the two interests. There is plenty of evidence in the record tending to prove that Cockburn assumed and agreed to pay the mortgage as a part of the consideration for the conveyance of the lot to him. We con-

sidered this question in passing on the pleadings, and what we then said applies to appellant's present insistence.

It is also insisted that as this is a suit of equitable jurisdiction, this court should weigh the evidence. The record in this case discloses that a number of witnesses orally gave evidence concerning facts of vital importance presented by the issues. In such cases the law is well settled, that we cannot weigh the evidence, and as there is some evidence in the record from which the court might have found every fact material to support its judgment, and the judgment being clearly within the issues, there was no error in overruling the motion for these causes.

Judgment affirmed.