Benson *v.* Abbott, Parker & Company, for use, etc.

1. A promissory note payable to the order of a named payee, not having been indorsed or otherwise assigned in writing so as to vest the legal title in the person to whom the same was delivered as collateral security, the action upon the note was properly brought

in the name of the original payee for the use of the person to whom the same was so delivered.

2. Where such a note was by the payee, before its maturity, delivered to another who took the same *bona fide*, either as a purchaser or for the purpose of holding it as collateral security, but by mistake or inadvertence the note was not indorsed or otherwise transferred in writing, the holder took it subject to all the equities between the original parties to the note existing at the time of such delivery, and which arose out of the transaction upon which the note was given. This is true, although at the trial the note was transferred in writing by the original payee to the usee.

November 26, 1894.

Action on note. Before Judge WESTMORELAND. City court of Atlanta. March term, 1894.

JAMES L. KEY, for plaintiff in error.

S. J. HALL and DORSEY, BREWSTER & HOWELL, *contra*.

ATKINSON, Justice.

The questions made by the record in this case arise upon the following state of facts: Abbott, Parker & Company, upon a promissory note made payable to themselves or order, for the use of the Maddox-Rucker Banking Company, brought suit against Benson, as one of the joint makers thereof; the other joint maker, Couch, being dead. This note, previous to the commencement of the action, had been by Abbott, Parker & Company placed with the Maddox-Rucker Banking Company as collateral security for a loan to them, but the deposit of the note was by delivery only, unaccompanied by any indorsement or other assignment in writing. The defendant pleaded, in substance, that, while apparently a principal upon the note and jointly liable as such with Couch, the other maker, he had no interest in the consideration thereof, was in fact a mere surety, and that this was known to Abbott, Parker & Company at the time they received the note in question; that Couch was a horse dealer, and upon the representation of himself and of the payee of the note, that the same was to be used by Couch in the purchase of horses for himself and upon his own

account, he was induced to sign the same, and that he signed the note as an accommodation to Couch, and not otherwise; that in fact Couch was the agent of the payees, and while they permitted him to use the horses purchased as his own, they concealed from the defendant the real relation existing between themselves and Couch; that during the time Couch so held the horses he executed a mortgage upon them in favor of the defendant to indemnify him against loss upon his contract of suretyship; that he himself regarded the horses as the property of Couch until after his death, which occurred before the suit was brought; that since the death of Couch, Abbott, Parker & Company have converted the horses to their own use, and refuse to allow any part of the proceeds realized from the sale of them to be applied to the payment of his mortgage, or to the extinguishment of the note sued upon; that until after the death of Couch, he was not advised of the claim of title to these horses upon the part of Abbott, Parker & Company, and then only when the administrator of Couch demanded them and the payees refused to deliver them, alleging as a reason therefor that the horses belonged to them, and were not the property of Couch, that in the whole transaction Couch was acting for them as their agent and upon their account only; that the estate of Couch is insolvent; and that by the wrongful act of the payees in concealing the true relation between themselves and Couch, and also by the misrepresentations of Couch, acquiesced in by them, by means of which the note was originally procured, and as well by the subsequent conversion of the horses, Abbott, Parker & Company had deprived him of his security and had greatly increased his risk.

The plaintiffs introduced their note and closed. A motion for a nonsuit was made, upon the ground that the suit could not be maintained without evidence of an

indorsement to Maddox-Rucker Banking Company; which was overruled. The defendant introduced witnesses whose testimony tended to establish the plea, and, if accepted as true, might so establish it. The plaintiff introduced witnesses who contradicted the defense, and in addition introduced at the trial a written assignment of the note in question, which was as follows: "We hereby indorse to the Maddox-Rucker Banking Company one note dated March 20th, 1893, signed by J. H. Couch and C. F. Benson, and payable to us, on which note there is a credit of five hundred dollars; this note having been transferred to said bank for value received before due, and the indorsement at the time of the transfer having been omitted by accident or mistake; said transfer having been made March 26th, 1893. This April 12th, 1894." (Signed) Abbott, Parker & Company. The evidence showed that the note had not previous to bringing the suit been transferred to the usee in writing. Upon the coming in of this evidence, it appears from the bill of exceptions that the court, upon the motion of plaintiffs' counsel, directed a verdict for the plaintiffs, upon the ground that as the evidence showed the note was received for value by the usee in this action, without notice, it took the same free from the equities alleged in defendant's plea.

1. The judgment overruling the defendant's motion to nonsuit was correct. It is one of the elementary rules of pleading, distinctly recognized by the code, that unless there be some statutory provision to the contrary, an action must be brought in the name of the person holding the legal title to the thing sought to be recovered. In order to pass the legal title to a promissory note, which is made payable to a named payee or order, there must be either an indorsement or assignment in writing by the payee. Mere delivery is sufficient to vest the equitable interest in a person to whom, for value, it is

delivered, but in order to so invest the holder of such a paper with both the legal and equitable interest as to enable him, in his own name, to maintain an action thereon, there must be a formal indorsement or assignment. In the case now under consideration, the payees of this note delivered the same as collateral without indorsement or assignment to the present holders, thus investing them with an equitable interest, but reserving in themselves the legal title. The suit is brought by those holding the strict legal title, and for the use of the person holding the beneficial interest; this is technically accurate, and therefore the refusal to nonsuit the plaintiff was correct.

2. In order to determine whether the court erred in directing a verdict, it is necessary first to inquire whether the defense set up was sufficient in law, and secondly, if it was sufficient in law, was the defendant precluded from making it by reason of the plaintiff's position as a *bona fide* holder of the paper sued on. We think that where one signs a promissory note ostensibly as a joint maker, but he is in fact a mere surety without interest in the consideration, this fact of suretyship may well be pleaded to an action by one who takes with notice of the alleged surety's true relation to the paper, and if the person receiving such paper either by a misrepresentation of material facts induces, to his prejudice, the alleged surety to become such, or if he thereafter appropriates to his own use a security which he by act or deed has led such surety to believe would be applied to his indemnity against loss, he thus increases by his act the risk of the surety and thus discharges him from liability. In dealing with this question we must assume that the witnesses for the defendant have spoken truthfully, as this judgment directing a verdict is equivalent to sustaining a demurrer to the sufficiency of the defendant's evidence, and is to be so considered. This evidence standing

alone, if undisputed, so far proves the facts as that the jury might be authorized to find: (1) That Benson was a mere surety. (2) That Abbott, Parker & Company knew that fact when Benson became such, and induced him to do so. (3) Couch used the money realized upon the note in buying horses for himself, and that Abbott, Parker & Co. so dealt with him as to justify Benson in believing the horses were his. (4) That to indemnify Benson against loss, Couch mortgaged these horses to him. (5) That the horses so mortgaged were afterwards taken possession of by Abbott, Parker & Co., and appropriated to their own use under a claim that Couch was their agent. (6) That Couch is insolvent. If these facts are granted, then the risk of this surety has been increased. By the act of the original payee he has been deprived of the only indemnity he could secure, and the effect of this would be to discharge him from liability at the suit of Abbott, Parker & Company, and as well at the suit of their privies occupying no better position.

We come now to consider whether the usee named in this suit is such a *bona fide* holder for value of the note in question, as will protect it against the equities existing between the original parties thereto. That the usee was such a *bona fide* holder seems to be the real ground upon which the presiding judge placed his judgment directing a verdict. A *bona fide* holder of a negotiable promissory note, who takes it for value before maturity, without notice of equities existing between the original parties thereto, takes it free from such equities. This rule is founded in the necessities of commerce, and is designed to strengthen the confidence of the commercial world in the integrity of these tokens of wealth. Until its maturity it may pass upon its face, accredited only by the indorsement of the payee, who thereby avouches to the world that as between himself and the maker there is no latent equity. He who emits such a paper

in the first instance takes the consequences of finding his promise to pay in the hands of one to whom it has been so avouched. If he has been defrauded by the payee in the procurement of the paper, he has placed it in the power of the payee to impose it upon another; and if one of two innocent persons must suffer, it should be he who first is at fault. Upon this theory, the reason of the rule operates, without injustice, upon the maker. The holder of such paper, however, if he would invoke an estoppel as against the secret equity of the maker, must see to it that the paper is properly indorsed to him. He must have not only an equal equity, but he must have the superior right. A failure of the payee to indorse, though he actually deliver, leaves the legal title still in the original payee; for indorsement is the method appointed by law for the due transmission of title to this class of commercial paper, and in the absence of indorsement, the holder cannot enforce its payment without the use of the payee's name. He has a qualified interest only, cannot, in a strict technical sense, be deemed a holder; and the defect in his holding resulting from a want of a perfect title, leaves him outside the class of persons who within the rule stated are protected against these defenses.

Aside from these considerations, it has been for a long time well settled law that one who without indorsement, though for value and without notice, takes a note payable to order, takes it subject to all defenses which would have prevailed against the original payee. It will be observed that the rule under consideration and which protects the holder against such equities applies only to commercial paper which is negotiable. Unless a promissory note is made payable to bearer, it is not *proprio vigore* negotiable in the strict legal sense; it is wanting in the final requisite which imparts to it the quality of negotiability, namely indorsement. By this act alone

can it become negotiable; and therefore it follows that
he who receives it before indorsement does not take it
as a negotiable paper, and not being thus negotiable, he
takes subject to the equities between the parties. Ex-
cept in case of negotiable securities, the law indulges
no presumptions in favor of the holder; he is not pre-
sumed to be such either *bona fide* or for value; but on the
contrary it charges him with notice of, and he takes
subject to, all defenses which, originating in the contract,
might be set up by the maker. Not only is this true
where the purpose is to invest the holder with the ab-
solute unqualified title to the paper, but it is likewise
true where it is intended only to pledge it as collateral
to another liability. In either case the negotiability of
the paper is of the very essence of the holder's claim to
protection against equities. If pledged as collateral,
without indorsement, a subsequent indorsement will
pass the legal title so as to enable the indorsee in pledge
to maintain an action in his own name; but such in-
dorsement, if postponed until after maturity, leaves the
holder thereunder affected with all the pre-existing
equities.

The code, section 2138, declares that promissory notes
and other evidences of indebtedness may be delivered in
pledge; and section 2139 declares the receiver in pledge
of promissory notes is such a *bona fide* holder as will pro-
tect him under the same circumstances as a purchaser,
from equities between the parties. Section 2788 declares
that the holder of a note as collateral security for a debt
stands upon the same footing as a purchaser. He is thus
placed upon the same plane as a purchaser. The right
of a purchaser for value is to be protected against equi-
ties only when by indorsement the paper is rendered
negotiable, and he is invested with the legal title. So
with a pledgee. So with the person who holds the paper
as collateral security;—they all stand upon the same

footing. In each case indorsement is the condition of absolution. It is true that notes of the character now under consideration may be pledged as collateral security by manual tradition only, but for such delivery to be effective as against pre-existing equities, it must be accompanied with the legal requisites to transmission of title. The pledgee must be a holder, a *bona fide* holder in due course of trade; and a regular indorsement by the payee is necessary to constitute him such. Our attention is directed to the case of *Smith et al.* v. *Jennings*, reported in 74 *Georgia Reports*, page 551, as bearing upon and ruling a principle otherwise than is herein expressed. In that case the proceeding was in equity to enforce the alleged lien of a judgment against certain land, a deed to which, together with a promissory note for the purchase money thereof, had been delivered in pledge. Whether or not the deed alone could have been delivered in pledge so as to vest an interest in the pledgee, is not material. When accompanied, however, by the note for the purchase money, its delivery had the effect to vest in him an equity, and in a contest between this judgment creditor and the pledgee, the latter was entitled, under the rule that he who seeks the aid of a court of equity in vindication of a supposed equitable right, must do equity, to have his debt first paid before the thing pledged could be appropriated to the payment of other debts of the pledgor. As between the judgment creditor and the pledgee, the equity of the latter was superior. His interest in the thing pledged had vested prior to the rendition of the judgment. The lien of the judgment, assuming that it could attach at all, would attach only to the interest of the defendant in execution in the thing bailed, and that interest was an equity of redemption. In that case the equities of the judgment creditor arose outside the contract. In this the equity of the surety inheres in the contract itself.

In that case notice or want of notice could not affect the lien of the judgment. In this case notice or want of notice is the one potential circumstance to charge the holder of this paper with, or absolve him from, the equities between the parties. In that case the right of the maker to make his defenses to an unindorsed promissory note was not called in question. Here it is the direct issue between the parties. So it appears that there is no conflict between the principle there declared and that here ruled. Indeed, it is apparent that the two cases involve the application of distinct principles, each equally well established.

The views herein expressed, defining the rights of the holder of an unindorsed promissory note made payable to order, are in perfect harmony with the great current of approved authority; and we are thus led to conclude that in the case now under review, the paper in question having gone into the hands of the usee without indorsement or assignment (whether this occurred through inadvertence or otherwise is immaterial), they took it charged with notice of, and subject to, the pre-existing equities, and though an assignment was in fact executed at the trial, this could not avail as against equities in favor of the maker which sprang out of and inhered in the contract itself. As to whether the proposed defenses were well made out we express no opinion. We leave that where the trial judge should have left it, to a jury; and accordingly direct a new trial.

*Judgment reversed.*