20050. CARPENTER *v.* WILLIAMS.

DECIDED JULY 21, 1930.

*Hammond & Kennedy,* for plaintiff in error.
*Callaway & Howard,* contra.

BELL, J.   In a suit by R. S. Williams against William Carpenter, a demurrer to the petition was overruled, and the defendant excepted.

The plaintiff's case was based upon the theory that the defendant was president of a corporation which had pledged or agreed to pledge certain notes as collateral security for an indebtedness to the plaintiff, but which notes were allowed to remain in the possession of the corporation for the purpose of collection, and that, while the notes were thus held in trust for the plaintiff, the defendant, with full knowledge of the agreement, wrongfully disposed of the notes, to the plaintiff's damage in the sum sued for.   The demurrer was based upon general and special grounds, but raised only the one question of whether the petition showed that the plaintiff had such title or interest in the notes as would authorize the kind of suit brought, the contention of the defendant being that the petition can be construed only as a suit in trover, or for a conversion, and that the facts did not show a pawn or pledge by the corporation, or such other right in the plaintiff as is necessary to support such an action.

The petition alleged: that on December 14, 1927, Penny Savings

Loan & Investment Company, being indebted to the plaintiff in the sum of $22,450, agreed to issue to him a certificate of deposit in the sum of $5,000, and to execute a note for the balance of $17,450, due one year from date and bearing interest at a rate specified, which note was to be secured by a mortgage on a described brick building and "certain collateral notes or bills receivable on property of the Steed Street and 15th Street subdivisions which said company now hold, and which notes aggregate a principal amount of around $13,000." Petitioner accepted this contract, relying upon the stipulations thereof as being made in good faith on the part of the company. The note for $17,450 and the security deed to the brick building were executed as provided in the contract. It was agreed between the plaintiff and the savings company that the collateral notes or bills receivable on the property situated in the subdivision which the company then held, as well as the note for $17,450, "should remain in the possession of the company for the purpose only of collecting the collateral purchase-money notes aforesaid as they should mature, and to place the collections when and as made to the credit of petitioner, and to credit the company's note aforesaid with like amounts placed to the credit of petitioner from that source." All of the collateral notes described above were purchase-money notes representing unpaid purchase-money for real estate sold to the several makers by the company, and consisted of 39 notes payable to the company, variously and specifically described, and aggregating the sum (face value) of $12,373.43 principal, besides interest from their respective dates.

Penny Savings Loan & Investment Company was adjudicated a voluntary bankrupt on February 16, 1928, and its assets, upon administration by a trustee in bankruptcy, proved insufficient to pay any dividend other than to secured creditors, and the plaintiff has received nothing except the sum of $5,000 representing the value of the building described above, which was released to him by the trustee in bankruptcy at this valuation. The plaintiff did not know of the insolvency of the company until it instituted proceedings to have itself declared a bankrupt. Petitioner then demanded that the company deliver him its own note for $17,450 and also the 39 other notes pledged by the company as collateral thereto, when he was informed that none of the notes were in the possession or control of the company. None of such notes have been produced

or delivered to the plaintiff "although often demanded of the officers of said company."

The defendant was the president of Penny Savings Loan & Investment Company during the time of the transactions hereinbefore described, and "was present as a director and presided as president, and participated in its action" authorizing the contract whereby the company agreed to pledge and execute, respectively, the notes herein referred to. The defendant thereafter, without the plaintiff's knowledge or consent, took the 39 collateral notes "from the possession and custody of said company, when and while said company held said notes in trust for petitioner as is hereinbefore alleged, and as said William Carpenter [the defendant] well knew, and wilfully, intentionally, and wrongfully disposed of said notes in a way beyond the power of petitioner to recover the same, and . . by reason of said unlawful conversion of said notes by defendant petitioner has sustained injury and damage to the extent of the value of said notes, to wit: $12,373.43."

■ We think the court was right in overruling the demurrer to the petition. We can not agree that under the allegations the plaintiff had no such property or right of possession in the notes as would entitle him to sue for their conversion. The Civil Code (1910), § 3528, provides that delivery of the property is essential to a pledge or pawn, and in *First National Bank* v. *Nelson,* 38 *Ga.* 391 (95 Am. D. 400), it is said that "delivery is the very essence of the bailment," and that this can not be dispensed with by an agreement between the parties to the effect that the party making the pledge will become the bailee of the other, the rule as to constructive delivery as in the case of a sale being inapplicable to a pledge or pawn. That case was followed in *National Exchange Bank* v. *Graniteville Mfg. Co.,* 79 *Ga.* 22 (3 S. E. 411), and was cited with approval in the case of *Commercial Bank* v. *Flowers,* 116 *Ga.* 219 (42 S. E. 474). However, in each of these cases the rights of creditors or of innocent third persons were involved; whereas in the present case the contest is solely between the party claiming the pledge and the alleged tort-feasor, and this fact should undoubtedly make a difference. The distinction was pointed out in *Maryland Casualty Co.* v. *Washington Loan & Banking Co.,* 167 *Ga.* 354, 360 (145 S. E. 761, 61 A. L. R. 323), and in that case it was also observed that "in *Citizens Banking Co.* v. *Peacock,* 103 *Ga.* 171 (29

S. E. 752), some of the remarks in *National Exchange Bank* v. *Graniteville Mfg. Co.,* supra, were declared to be mere dicta."

It may be that a pledge necessarily connotes the idea of an actual deposit of the property involved, but there would seem to be no reason why the parties may not, by special agreement, dispense with this common requisite, where the interests of third persons do not intervene. They may agree that with respect to each other and the property they will occupy the same status as though an actual deposit had been made, and the rights of themselves and mere intermeddlers should be governed accordingly. *Ruff* v. *Anderson,* 145 *Ga.* 83 (88 S. E. 545) ; 49 C. J. 910-917.

We think this conclusion is a necessary deduction from the decisions of our own Supreme Court, and, in this view, it is unnecessary to discuss in this opinion the cases from other jurisdictions. See, in this connection, Casey *v.* Cavoroc, 96 U. S. 467 (24 L. ed. 779) ; Easton *v.* German American Bank, 127 U. S. 532 (8 Sup. Ct. 1297, 32 L. ed. 210) ; Robertson *v.* Robertson, 186 Mass. 308 (71 N. E. 571) ; Mahoney *v.* Hale, 66 Minn. 463 (69 N. W. 334) ; Re Succession of Lanaux, 46 La. Ann. 1036 (25 L. R. A. 577) ; Geilfuss *v.* Corrigan, 95 Wis. 651 (37 L. R. A. 166, 60 Am. St. R. 143) ; Buffalo German Ins. Co. *v.* Third National Bank, 162 N. Y. 163 (56 N. E. 521, 48 L. R. A. 107) ; American Exchange National Bank *v.* Federal National Bank, 226 Pa. 483 (75 Atl. 683, 27 L. R. A. (N. S.) 666, 134 Am. St. R. 1071) ; Fourth Street National Bank *v.* Taylor, 96 C. C. A. 629 (172 Fed. 177, 30 L. R. A. (N. S.) 552) ; Hastings *v.* Lincoln Trust Co., 115 Wash. 492 (197 Pac: 627, 18 A. L. R. 583) ; Jones on Collateral Securities (3d ed.), 8, 38; 21 R. C. L. 642 et seq.

A pledgee has such an interest in the subject-matter as will authorize a suit for damages by him against another for its conversion (*Eplan* v. *Wheat,* 134 *Ga.* 511, 68 S. E. 78) ; and this is true as to promissory notes which are pledged as collateral, even though they may not have been indorsed or transferred in writing, since the right in such a case is one which appertains to the physical custody of the papers. *Benson* v. *Abbott,* 95 *Ga.* 69, 77 (22 S. E. 127) ; 49 C. J. 919.

■ Moreover, even if the petition may not be sustained, either as an action of trover or as a suit for damages for a conversion, we are still of the opinion that it sets forth a cause of action. The

plaintiff has not said that he is suing in trover or for a conversion, although it is stated in the petition that he has been damaged by a conversion of the collateral. The nature of the suit is to be determined, not by the designation of the pleader, but by the allegations of the petition, the character of the wrong complained of, and the kind of remedy sought. *Malone* v. *Robinson, 77 Ga. 719; McNorrill* v. *Daniel, 121 Ga. 78* (48 S. E. 680); *City of Albany* v. *Cameron & Barkley Co., 121 Ga. 794* (49 S. E. 798); *Atlanta Finance Co.* v. *Lunsford, 32 Ga. App. 787* (3, 4) (124 S. E. 813).

It is not the duty of the appellate court, in passing upon exceptions to a judgment sustaining or overruling a general demurrer, to determine what is the nature of the cause of action declared on. The test of the sufficiency of a petition as against such a demurrer is whether the defendant can admit all of the allegations made and escape liability. *Citizens Bank* v. *Union Warehouse Co., 157 Ga. 434* (6, 9), 454 (122 S. E. 327). What are termed special grounds of demurrer in the present case are mere amplifications of the general demurrer; and hence the petition must be held good unless the defendant can admit the truth of everything alleged and still avoid liability.

The petition shows that the plaintiff had valuable rights under a contract which subsisted between him and the Penny Savings Loan & Investment Company, and that with knowledge of this fact the defendant wilfully committed acts which made it impossible for the company to perform its obligations under the contract; and we think the principle enunciated in *Luke* v. *DuPree, 158 Ga. 590* (124 S. E. 13), is applicable. In that case it was held actionable for one maliciously or without justifiable cause to induce another to break his contract with a third person, to the damage of the latter. While the defendant may not technically have induced the company in the instant case to break its contract, he yet, according to the allegations, caused it to do so, being apparently the principal and responsible agency in that accomplishment.

As was said in the *Luke* case, "the theory of this doctrine is that the parties to a contract have a property right therein, which a third person has no more right maliciously to deprive them of or injure them in, than he would have to injure their property Such an injury amounts to a tort for which the injured party may seek compensation by an action in tort for damages. An examina-

tion of the authorities cited above will show that the term 'malicious' or 'maliciously' means any unauthorized interference, or any interference without legal justification or excuse. Personal ill will or animosity is not essential."

Should it be true, as insisted by the defendant, that the petition disclosed no right of action based upon the theory of a conversion, still it can not be said absolutely, from the averments, that the plaintiff intended to proceed upon such a cause of action; and where the petition is duplicitous or ambiguous, and is not attacked by special demurrer upon this ground, and "the facts alleged in a petition are such as would be proper and adequate to support one form of action but inadequate, although appropriate, to another form of action, . . the courts, in endeavoring to ascertain the plaintiff's intention, will prima facie presume that his purpose was to serve his best interest, and will construe the pleadings so as to uphold and not to defeat the action." *Speir* v. *Westmoreland*, 40 *Ga. App.* 302 (3) (149 S. E. 422).

We think the instant suit could be upheld as an action on the case, which "is an action for the recovery of damages for acts unaccompanied with force and which in their consequences only are injurious; for though an act may be itself lawful, yet, if in its effects or consequences, it is productive of *any injury* to another, it subjects the party to this action." *Hendrick* v. *Cook*, 4 *Ga.* 241, 260. Such an action is brought under our Civil Code (1910), § 4405, providing that "when the law requires one . . to forbear the doing of that which may injure another, though no action be given in express terms, upon the accrual of damage the party may recover." Compare *Anderson* v. *Kokomo Rubber Co.*, 161 *Ga.* 842 (132 S. E. 76).

In Jones *v.* Stanley, 76 N. C. 355, it was held that where the president of a railroad company wilfully and maliciously, on behalf of the company, refused to complete a contract with another for the transportation of lumber, the president could be held personally liable in damages for the resulting injury to the party having such agreement with his company. This case was cited with approval by the Supreme Court of this State in *Employing Printers Club* v. *Doctor Blosser Co.*, 122 *Ga.* 509, 518 (50 S. E. 353, 69 L. R. A. 90, 106 Am. St. R. 137, 2 Ann Cas. 694). In McGurk *v.* Cronenwett, 199 Mass. 457 (85 N. E. 576, 19 L. R. A. (N. S.)

561), the Supreme Court of Massachusetts held that an officer of a corporation may be held liable for maliciously inducing it to break a contract with its employee and discharging him from its employment. In the opinion it was said that it would make no difference in the defendant's liability, if the charges in the declaration were proved, whether he was a mere stranger to the contract or an officer or representative of the other contracting party. The case was said to fall within the meaning of the decision in Moran v. Dunphy, 177 Mass. 485 (59 N. E. 125, 83 Am. St. R. 289, 52 L. R. A. 115), which was based upon the principle recognized and applied by our own Supreme Court in Luke v. DuPree, supra. It is interesting to notice that both of these decisions by the Supreme Court of Massachusetts were cited by Justice Hines in his opinion in the Luke case. Compare Employing Printers Club v. Doctor Blosser Co., supra; Angle v. Chicago &c. R. Co., 151 U. S. 1 (14 Sup. Ct. 240, 38 L. ed. 55) ; 21 Am. & Eng. Enc. Law (2d ed.), 880-2; 14A C. J. 175-7.

The instant case does not appear to present the element of conspiracy, but this would not be necessary to fix the liability of the defendant as a procurer of the breach; although the establishment of such conspiracy might be essential to the maintenance of a tort action against the opposite party to the contract.

An action of this sort probably could not be sustained where the act or conduct of the defendant as an agent or officer of the corporation did not amount to more than nonfeasance, but, according to the allegations made, the defendant here committed a positive wrong. See, in this connection, Kimbrough v. Boswell, 119 Ga. 201 (45 S. E. 977) ; Southern Railway Co. v. Grizzle, 124 Ga. 735 (53 S. E. 244, 110 Am. St. R. 191) ; Miller v. Wilson, 98 Ga. 567 (25 S. E. 578, 58 Am. St. R. 319) ; McConnell v. Prince, 12 Ga. App. 54 (76 S. E. 754).

The petition set forth a cause of action, and was not subject to any ground of the demurrer interposed.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*