## 26177. ADAMS *v.* LEWIS.

Decided June 11, 1937.

*Hallie B. Bell, Cork & Cork,* for plaintiff.

*Jones, Johnston, Russell & Sparks, Jones & Johnston,* for defendant.

Sutton, J. G. G. Adams brought suit against Charles B. Lewis, and in his petition as amended he alleged that on October 6, 1932, the plaintiff subscribed for 82 units of stock in Alexander Hamilton Plan Inc., through its agent F. M. Cox, to whom he delivered 82 shares of stock in Franklin Savings & Loan Company in full payment therefor. Cox disposed of the Franklin Savings & Loan Company stock for $820, which he deposited to his credit in the City Bank & Trust Company of Macon, and began to draw checks on this fund in his own name and for his own benefit. On October 12, 1932, the defendant, who was the president of Alexander Hamilton Plan Inc., learned of the aforementioned transactions of Cox, and he then agreed with the plaintiff to rescind the contract whereby the plaintiff had subscribed for the stock of Alexander Hamilton Plan Inc., and agreed that if he

could get the money back from Cox he would turn it over to the plaintiff. Thereupon the defendant filed suit in the name of Alexander Hamilton Plan Inc. against Cox, to recover the amount deposited by him in the City Bank & Trust Company, obtaining an order restraining Cox and the bank from disposing of the money. On October 15, 1932, the defendant got Cox to give him a draft payable to Alexander Hamilton Plan Inc., for the balance of the money in Cox's name in said bank and which he had obtained by the sale of the plaintiff's stock in Franklin Savings & Loan Company, the defendant indorsing said draft in the name of Alexander Hamilton Plan Inc., by himself as president, and obtaining from the bank $52.75 in cash and a cashier's check payable to Alexander Hamilton Plan Inc., for $601.94, which was indorsed by the defendant as president of Alexander Hamilton Plan Inc., and deposited by him to the credit of that corporation in an Atlanta Bank. It was alleged that these acts of the defendant were in violation of his agreement with the plaintiff, whereby the stock subscription was rescinded and the money was to be returned to the plaintiff if the defendant could get it back from Cox; that Alexander Hamilton Plan Inc. was insolvent, and that the defendant had deprived the plaintiff of his money and had converted the same.

The defendant answered, and, among other things, set up that Cox was not authorized by Alexander Hamilton Plan Inc. to take the plaintiff's stock in Franklin Savings & Loan Company as he did, but that said corporation, through the defendant, agreed with the plaintiff to ratify the unauthorized acts of Cox in this respect, and that pursuant to this agreement suit was brought in the name of Alexander Hamilton Plan Inc. against Cox to recover the proceeds of the sale of such stock, and as a result of that suit the corporation did recover from Cox $601.94, for which the plaintiff was to receive stock in Alexander Hamilton Plan Inc., or in its reorganization, but that before said corporation was reorganized the plaintiff decided that he wanted the money recovered by the corporation instead of stock, and the defendant, on behalf of such corporation, agreed to restore to the plaintiff the sum of $601.94; that such agreements were not personal on his part, and did not render him individually liable, but constituted agreements on the part of said corporation, which it was unable to perform after

promising to pay the plaintiff, and that said corporation was insolvent when the defendant made his answer. On the trial the judge directed a verdict for the defendant. The plaintiff's motion for new trial was overruled and the exception is to that judgment.

We think that the court erred in directing the verdict for the defendant, because there was a conflict in the evidence on a material issue in the case; that is, with reference to what the agreement was between the plaintiff and the defendant when the acts of Cox, in regard to the money he had placed in the bank, were discovered. The plaintiff testified that their agreement was to rescind the subscription contract for stock in Alexander Hamilton Plan Inc., and that the defendant further agreed that if he could recover from Cox the money on deposit in his name he would turn it over to the plaintiff. The plaintiff testified, in part: "It was only a day or two after I had this transaction with Mr. Cox before I talked to Mr. Lewis, because he went to Roberta the next morning and got the money and came back, and then Mr. Sloan or somebody 'phoned me down there that Cox was checking the money out. . . On this second day Mr. Lewis 'phoned down to Powersville to know how long it would take me to come up here, and I told him about thirty-five minutes. . . We went on up to Colonel Jones' office, and he said Cox was checking the money out and said, 'We have got to stop it,' and said, 'In whose name do you want it in, your name or my name?' He never mentioned Alexander Hamilton's name any more from that day to this. I said, 'Doesn't matter, doesn't make any difference to me whose name, all I want is my money. I am through with stock.' . . I can tell the jury the exact words of Mr. Lewis in that office. He said 'Cox is checking it out,' and says, 'I want to know how. Whose name do you want it to come in?' Said 'We have got to stop him from checking it out.' I said, 'Mr. Lewis, it doesn't make any difference whether it is in my name or your name.' I said, 'All I want is my money.' He said, 'Well, we are going to reorganize, and I will give you the equivalent of $820 in new stock.' I said, 'I don't want any more stock.' I said, 'I just want to get my money back, but I did not want to lose what Cox had checked out,' and later he figured out and said he owed me $601.94. . . Mr. Lewis offered to sell me stock while in Mr. Jones's office on

that day. He said they were going to reorganize, and he would give me stock in the new organized company and give me full face value of $820. I said I did not want any more stock. I wanted the money. . . I saw Mr. Lewis after that time. . . He notified me to meet him at the Dempsey Hotel. We had some discussion there at the Dempsey Hotel about my money, and then he figured it out on a piece of paper, $820, and then subtracted and worked it all out and said he owed me $601.94. This is the paper where Mr. Lewis figured it out there at the hotel. The paper is in his handwriting. This $120 is the commission of Cox that was taken out. I did not want to lose it. I said I didn't think I should pay Cox commission, and that is where he figured it down to $601.94. This item of $52.75 here on this paper is for Colonel Jones. He would not say anything about that item. I had to pay all that. It all had to come out of the $820. After this $601.94 figure was arrived at, Mr. Lewis said that he would get up the money. We never mentioned Alexander Hamilton Plan any more from the time the money was taken to the bank. . . At the time Mr. Lewis figured this memorandum owing me $601.94 he did not mention that the corporation owed me the $601.94. The corporation was never mentioned any more. He says, 'I owe you $601.94.' . . Mr. Lewis said he was head of the company. He said he was running it."

There was testimony to the effect that immediately after the suit was filed in the name of Alexander Hamilton Plan Inc. against Cox, the defendant got Cox to issue to said corporation a check for the money he then had in the bank; that defendant indorsed this check and got $52.75 in cash and a cashier's check for $601.94; that the cash was used in paying the lawyer's fee and court costs in the suit, and the check for $601.94 was indorsed by the defendant and deposited by him in an Atlanta bank to the credit of Alexander Hamilton Plan Inc., and was then drawn out in settlement of the company's obligations and expenses on checks countersigned by the defendant; that the defendant did not get any money from the Alexander Hamilton Plan Inc. except a salary of $200 per month and reimbursements of a few expense items that he had paid out for the company. The defendant contended and testified that while the stock subscription was originally invalid, as Cox had no authority to accept in payment therefor stock in

another corporation, still, when he discovered Cox's actions in this respect, he conferred and agreed with the plaintiff to ratify the subscription, and to file suit in the name of Alexander Hamilton Plan Inc. against Cox, to recover the money he had deposited in the bank from the sale of plaintiff's stock; that stock was to be issued to plaintiff. Before this was done, but after the money was recovered from Cox, the plaintiff decided he wanted the money and not the stock; and the corporation promised to pay him the money, but was not thereafter able to do so.

The plaintiff did not designate in his pleadings any particular form of action; but this is to be determined from the facts pleaded, the wrong complained of, and the remedy sought. He was not called on by demurrer or otherwise to elect or designate the particular form of action in this proceeding. Where a petition is subject to two constructions, and the allegations will support one form of action rather than the other, the pleader is presumed to have adopted the form of action that can be upheld. So, if the plaintiff here has alleged and proved a cause of action, either for damages for conversion, or one in assumpsit, it should be upheld. Under the pleadings and the evidence the jury would have been authorized to find that the defendant agreed with the plaintiff to repudiate his subscription contract for stock in Alexander Hamilton Plan Inc., and to turn over to the plaintiff the money derived from the sale of his stock by Cox, if and when it was recovered from Cox, and that Alexander Hamilton Plan Inc. was insolvent when the defendant indorsed the check from Cox and accepted a cashier's check therefor which he deposited in the bank to the credit of this corporation, and which was drawn out on checks countersigned by the defendant in settlement of obligations and expenses of such corporation, instead of being turned over to the plaintiff as the defendant had agreed to do; and that such acts and conduct of the defendant in these circumstances constituted a conversion of said fund. The fact that the defendant may have acted as president of a corporation in so converting this fund would not prevent his being liable therefor as an individual. According to the plaintiff's contention and evidence, neither the corporation nor the defendant had any right to the fund here in controversy. Under the principles enunciated in *Alexander* v. *Coyne*, 143 *Ga.* 696 (85 S. E. 831, L. R. A. 1916D, 1039), and *Carpen-*

*ter* v. *Williams,* 41 *Ga. App.* 685 (154 S. E. 298), the present suit can be upheld either as an action for damages for a conversion or one in assumpsit. The court erred in directing the verdict for the defendant, and in overruling the motion for new trial.

*Judgment reversed. Stephens, P. J., concurs.*

FELTON, J., concurring specially. I concur in the judgment on the theory that if Alexander Hamilton Plan Inc. elected not to ratify the stock sale for the purpose of carrying it out by becoming the unqualified owner of the money and delivery of the stock to Adams, but simply ratified it to the extent of obtaining Adams's money for him from the agent Cox, the money at all times was the property of Adams. So, if the jury should find that such was the case, then the money belonged to Adams when Lewis received it, and under the authorities cited he would be liable for the conversion of it. On the other hand, if Alexander Hamilton Plan Inc. unconditionally ratified the stock sale to carry it through, and after obtaining the money agreed with Adams to rescind the trade, failing to do so, Adams's recourse would be against the corporation for a breach of the contract to rescind where he agreed to do nothing and did nothing to change the status, obligations, and rights of the parties. The basis for the present suit is the ownership of the money at the time it came into Lewis's hands. If it was in Adams, the suit is good. If it was in the corporation, it is not. I think the jury would have been authorized to find that the money at all times was treated as the property of Adams, and that he had a right to maintain the suit.