## RHODEN *v.* THE STATE.

1. The Penal Code (1910), § 125, declares: "If any person shall, by offering higher wages or in any other way, entice, persuade, or decoy, or attempt to entice, persuade, or decoy any servant, cropper, or farm laborer, whether under a written or parol contract, after he shall have actually entered the service of his employer, to leave his employer during the term of service, knowing that said servant, cropper, or farm laborer was so employed, he shall be guilty of a misdemeanor." *Held*, that the foregoing provision is not violative of article 1, section 1, paragraph 3, of the constitution of this State (Civil Code, § 6359) which declares: "No person shall be deprived of life, liberty, or property, except by due process of law," nor is such act violative of the due-process clauses of the fifth and fourteenth amendments to the Federal constitution.

2. The criminal accusation in this case alleged: "By virtue of the affidavit of G. L. Prince filed in said court, and in the name and behalf of the citizens of Georgia, Dave Rhoden is charged and accused with having committed the offense of misdemeanor. For that the said Dave Rhoden, on the 6th day of June in the year 1924, in Thomas County, State of Georgia, with force and arms, then and there did unlawfully by offering higher wages, to wit, three dollars per day, and by requesting and urging G. W. McKelvin to go with him and work for the Council Lumber Company at Council, Georgia, then and there stating to the said G. W. McKelvin that the South Georgia Grocery Company, doing business as the Barrington Lumber Company, was then shut down and was not going to run any more, did entice, persuade, and decoy, and did thereby attempt to entice, persuade, and decoy the said G. W. McKelvin to leave the service of the South Georgia Grocery Company, doing business under the name and style of the Barrington Lumber Company, his employer; the said G. W. McKelvin then and there being the servant of the South

Georgia Grocery Company, doing business under the name and style of the Barrington Lumber Company, employed as such under a verbal contract beginning May 1, 1924, and ending September 1, 1924, at the rate of ($2.00) two dollars per day; the said G. W. McKelvin being then and there actually in the service of the South Georgia Grocery Company, doing business under the style and name of the Barrington Lumber Company, the said Dave Rhoden then and there knowing that the said G. W. McKelvin was so employed. Contrary to the laws of said State, the peace, good order, and dignity thereof." *Held*, that this sufficiently alleged a violation of the foregoing statute.

(*a*) While it is essential to the validity of an accusation under the provisions of the Penal Code (1910), § 125, that it shall plainly appear from the accusation that the alleged offense was committed during the term of the service contracted for (*Holt* v. *State*, 151 *Ga.* 332, 106 S. E. 548), still there is sufficient compliance with this requirement in the present instance, since the accusation states the dates of the commencement and of the expiration of the contract of service, and the attempted hiring is charged as having occurred upon an intermediate date.

3. It was not erroneous to overrule the demurrer to the accusation.

No. 4585.  SEPTEMBER 17, 1925.

Enticing servant.  Before Judge Hammond.  City court of Thomasville.  May 9, 1924.

*E. L. Joiner* and *E. K. Wilcox*, for plaintiff in error.

ATKINSON, J.  1.  To the ruling announced in the first headnote, holding that the statute therein quoted is not violative of the provisions of the constitution therein specified, the following may be added.  In the case of *Employing Printers Club* v. *Doctor Blosser Co.*, 122 *Ga.* 509 (3), 516, 519 (50 S. E. 353, 69 L. R. A. 90, 106 Am. St. R. 137, 2 Ann. Cas. 694), it was held: "The malicious procurement of a breach of contract of employment, resulting in damage, where the procurement was during the subsistence of the contract, is an actionable wrong."  In the opinion it was said: "The term 'malicious,' used in this connection, is to be given a liberal meaning.  The act is malicious when the thing done is with the knowledge of the plaintiff's rights, and with the intent to interfere therewith.  It is a wanton interference with another's contractual rights."  It was also said: "At common law the remedies for breach of contract were confined to the contracting parties, and limited to direct damages and consequential damages proximately resulting from the act of him who is sued. This general rule admitted of one exception, and that was the right of action against a stranger for wrongfully enticing away a servant in violation of his contract of service with his master.  The

exception is said to have been based on the ancient statute of laborers. The early English cases limited the action to the enticement of menial servants, but the later cases, beginning with Lumley v. Gye, 2 E. & B. 216, have extended the doctrine beyond menial servants; and by the modern interpretation of this doctrine by the English courts the rule is extended to a malicious interference with any contract." The above ruling was followed in the recent case of *Luke* v. *DuPree,* 158 *Ga.* 590 (124 S. E. 13). See also *Burgess* v. *Georgia, Florida & Alabama Railway Co.,* 148 *Ga.* 415 (96 S. E. 864); *Callan* v. *Exposition Cotton Mills,* 149 *Ga.* 119 (99 S. E. 300); *McMichael* v. *Atlanta Envelope Co.,* 151 *Ga.* 776 (108 S. E. 226, 26 A. L. R. 149).

Hoole *v.* Dorroh, 75 Miss. 257 (22 So. 829), was a suit by an employer, under a statute, to recover double damages from a third person for enticing his servant away during his contract of employment. The statute provided that upon conviction an offender should be fined not less than twenty-five dollars nor more than one hundred dollars, and should be liable to the employer for double the amount of the damages which he may have sustained. The statute was attacked as being unconstitutional upon the grounds, among others, that it offended the due-process clauses of the State and Federal constitutions; and the court sustaining the constitutionality of the statute held: "The statute, Code 1892, § 1068, which forbids, under civil and criminal penalties, any person interfering with a tenant or laborer of another during the continuance of the lease or contract of service, is not class legislation, since it applies to all persons, and, as it condemns only a breach of civil duty, is not violative of either the Federal or State constitutions." In the opinion it was said: "It is insisted by the appellant that the statute is unconstitutional, and should be so declared by this court. We have not been able to see wherein it is obnoxious to any of the provisions of the Federal or State constitution. It is certainly not class legislation, at least as to persons, for it declares, if 'any person' shall willfully interfere with a laborer or tenant of another, during the continuance of the contract or tenancy of such laborer or tenant, etc.; it applies to all persons, white or colored, high or low, and forbids only a breach of civil duty. It is true that it applies to a particular class of contract rights, but because it does not apply to all contract rights can be no objection to its validity.

A, by force or threats, drives the tenants of B off the leased premises, and thereby, in some substantial manner, interferes with a compliance by said tenants of their duty towards their landlord; now, if A be indicted or sued for such willful wrong, does it lie in his mouth to say that because other breaches of civil duty in relation to contracts are not indictable or suable, therefore the law that inflicts a penalty, or double damages, upon the breach of this one is unconstitutional? We think not. The constitution, in respect to civil rights, applies to persons only, not to things. Things take care of themselves, and damages to repair their loss or injury is the measure of protection awarded them. Our bill of rights was ordained to secure the rights and liberties of the common law, and, in some cases, to enlarge them; but it was never supposed that the civil rights of person or property were insecure under the common law. Its admirers boasted that involuntary servitude, without the default of the subject, could not exist beneath its shield, and that at the instant a slave set foot upon English soil, he became a free man. By the elementary writers on jurisprudence, the common law was called common right or common justice. In magna charta it is called right. 1 Tho. Coke, 11. And yet the common law supplied a remedy for breach of civil contract or duty. Blackstone (1 Bk. 429) says: 'If any person do hire or retain my servant, being in my service, for which the servant departeth from me and goeth to serve the other, I may have an action for damages against both the new master and the servant or either of them. The reason and foundation upon which all this doctrine is built seem to be the property that every man has in the service of his domestics, acquired by the contract of hiring and purchased by giving them wages.' The action is founded upon common-law principles, and it only serves to give double damages, which many statutes in England and this country have done without being considered objectionable to right or justice. The English statute of Gloucester gave treble damages for waste. So, our legislature, considering the importance of agriculture as the foundation of our wealth and prosperity, and the necessity of protecting the rights relating to its advantage, has seen fit, in furtherance of the common good as well of the laborers and tenants as of employers and landlords, 'to incite and constrain' the former to observe the duties imposed upon them by contract. The statute protects contract rights; it destroys

none. The power of the State to pass such statutes is founded upon the police power, 'by which the State seeks not only to preserve the public order and to prevent offenses against the State, but also to establish, for the intercourse of citizens with citizens, those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own, so far as is consistent with a like enjoyment of rights by others.' Cooley, Con. Lim. 572. The decisions to which we have been referred by the learned counsel concern mainly the protection of right; but this statute is directed against wrong. It is intended for the protection of right, and to inflict damages upon one who knowingly violates the right of another to his injury. We may add, this statute applies not only to persons engaged in agriculture, but to all laborers and employers in other cases of employment. We conclude that the statute is not antagonistic to the State or National constitution, nor violative of the fundamental principles of justice, and that it is clearly within legislative discretion."

What is said in the foregoing opinion is applicable to the statute of this State, quoted in the first headnote, and upon the reasons advanced sufficiently demonstrates that the statute is not violative of the due-process clauses of the State and Federal constitutions. This ruling does not conflict with the ruling in *Fortune* v. *Braswell*, 139 *Ga.* 609 (77 S. E. 818), which holds that: "Civil Code §§ 3712 and 3713, which provide that when the relation of employer and employee, or of landlord and tenant of agricultural lands, or of landowner and cropper has been created by written contract or by parol contract partly performed, made in the presence of one or more witnesses, it shall be unlawful to employ, or to rent lands to, or to furnish land to be cropped by such employee, tenant, or cropper, without first obtaining the written consent of the employer, landlord, or landowner, as the case may be, and providing that any person violating the statute shall, at the option of the party alleged to have been injured, be prosecuted and upon conviction punished as for a misdemeanor, or shall be liable in damages in a sum not less than double the wages of the employee, or, in case of landlord and tenant or landowner and cropper, in a sum not less than double the rental value of the land, which is fixed at 1,000 pounds of middling lint-cotton to the

plough, offend the constitutional guaranty that no person shall be deprived of life, liberty, or property except by due process of law, in that power is delegated to a private individual at his option to classify the act denounced by the statute to be a crime punishable by imprisonment or to be a private wrong redressable in damages; and further because it lays an unreasonable restriction on the right to contract with reference to one's labor or the right to employ such labor." It is apparent that §§ 3712 and 3713, supra, differ from the Penal Code, § 125, which is the law that is now assailed as being unconstitutional. Sections 3712 and 3713 make it unlawful for a third person to employ or rent lands or furnish land to be cropped, etc. This would make it unlawful for a third person to do the things specified, notwithstanding the duty of the employee to his employer under his contract of employment might permit him to do so without detriment to his duty, which is very different from enticing, persuading, or decoying the servant to leave his employer, during his term of service, as referred to in the Penal Code, § 125. Neither does the decision above announced conflict with Toney v. State, 141 Ala. 120 (37 So. 332, 67 L. R. A. 286, 109 Am. St. R. 23, 3 Ann. Cas. 319). The statute in that case made it a misdemeanor for an employee under contract, etc., to break his contract, and did not involve the question, as in this case, of a third person enticing the employee to break his contract.

2, 3. The rulings announced in the second and third headnotes do not require elaboration.

*Judgment affirmed. All the Justices concur.*