No. 32,949

ELMER C. YOUNG and LELAH E. YOUNG, *Appellants*, v. CARL HAUBER and THOMAS H. TRIGGS, *Appellees*.

(58 P. 2d 1083)

Opinion filed July 3, 1936.

*Alcid Bowers,* of St. Joseph, Mo., for the appellants.
*C. W. Reeder,* of Troy, for the appellees.

The opinion of the court was delivered by

BURCH, C. J.: The action was one by Young, a landowner, against Hauber and Triggs, for damages. The essence of the cause of action was this: Triggs, the holder of a certificate of purchase of the land, issued pursuant to sale made in a mortgage-foreclosure action, assigned the certificate to Hauber, who took out a sheriff's deed and thereby prevented the carrying out of an arrangement between Triggs and the Home Owners' Loan Corporation whereby the indebtedness against the land could be refunded. Judgment was rendered for defendants on the pleadings and the opening statement of the case for Young. Young's wife was joined as a party plaintiff, but for simplicity the case will be treated as if Young were sole plaintiff. Plaintiff appeals.

The petition alleged Young mortgaged the land to Triggs, the mortgage was foreclosed, and judgment was rendered in favor of Triggs for $318.18 and costs of suit, amounting to $26.90. On June 20, 1933, the land was sold for $363.70, under order of sale, to Triggs, who received a certificate of purchase. By a moratorium order, period of redemption was extended to March 1, 1935. Young was required to pay Triggs five dollars per month.

On September 26, 1934, Triggs executed the following writing, addressed to the Home Owners Loan Corporation:

"The undersigned is a holder of a first mortgage or other obligation, which constitutes a lien or claim on the title to the home property of ............ Elmer

C. Young ............ located at ............ Troy, Kansas, ............ in the sum of $300, including unpaid balance of principal and interest to date.

"Being informed that said owner has made application to Home Owners' Loan Corporation to refund his said indebtedness, the undersigned has considered the method of refunding mortgages provided in Home Owners' Loan Act of 1933, as passed by congress and approved by the President, and the undersigned hereby consents, if said refunding can be consummated, to accept in full settlement of the claim of the undersigned the sum of $300, face value of the bonds of Home Owners' Loan Corporation, to be adjusted with not exceeding $25 cash and thereupon to release all the claims of the undersigned against said property.

"It is understood that the Home Owners' Loan Corporation will incur trouble and expense in connection with its effort to refund the indebtedness of said home owner, and this consent is executed in consideration of the same and shall be binding for a period of 90 days from date, and thereafter until 10 days written notice shall have been given the state manager of the corporation.

"This, the twenty-sixth day of September, 1934.

"(Signed)    THOMAS TRIGGS."

On December 7, 1934, Triggs assigned the certificate of purchase to Hauber, and on April 15, 1935, Hauber demanded and received a sheriff's deed to the land.

The petition contained the following allegations:

"The defendant Triggs signed a compromise settlement with the plaintiffs and agreed to accept three hundred dollars in bonds of the Home Owners' Loan Corporation from the plaintiffs in full settlement of said judgment and release all his claim against said land. . . .

"Triggs promised and agreed with the said Home Owners' Loan Corporation to coöperate with said corporation to secure said loan to these plaintiffs and discharge said land from all claims that he had against it; that if the said Triggs had coöperated as he agreed to do, the plaintiffs could have procured from said Home Owners' Loan Corporation three hundred dollars in bonds as aforesaid before March 1st and ten days' notice thereafter. . . .

"Carl Hauber, defendant, purchased said certificate of purchase from said defendant Triggs for the sum of two hundred fifty dollars, and at that time the said defendant Hauber knew that said Triggs had agreed to release said judgment and release his claim against said land for three hundred dollars in bonds as aforesaid. . . .

"That said defendant Hauber with the intent to defraud the plaintiffs out of the said home and property, exercised an undue influence over the mind of said defendant Triggs and over-persuaded him to assign wrongfully said certificate of purchase to him, when the said Hauber knew that said assignment was wrongful, illegal and in violation of said Triggs' duties and agreements as aforesaid.

"Plaintiffs allege that the acts of said defendants as aforesaid were fraudulent and were done for the purpose of wrongfully depriving the plaintiffs of the privilege to redeem said land which is of the value of one thousand dollars."

The petition further alleged that on April 1, 1935, Young offered to pay Hauber $300 for a release of his interest in the land and Hauber refused to accept the money.

The petition prayed judgment for $760 actual damages and for the sum of $1,000 punitive damages.

Triggs answered that in December, 1934, he was advised by HOLC it would be impossible to refund the indebtedness against the Young land, because HOLC would be out of funds before Young's application could be reached. During the period of redemption Triggs needed money and sold the certificate of purchase to Hauber. The answer also alleged that in March, 1935, he was advised by HOLC Young's application had been refused.

Hauber answered that he acquired the certificate of purchase in due course, and after expiration of the moratorium period he took out a sheriff's deed. Hauber's answer also pleaded the material facts contained in Triggs' answer.

Young's reply admitted that after December 7, 1934, HOLC did suspend loans for a short period, and then resumed making loans. The reply also alleged that in December, 1934, HOLC sent to Triggs another instrument of the same kind as that of September 26, 1934; that Hauber got possession of it, held it for a month, and then turned it over to Triggs in February, 1935, and had Triggs sign it.

The opening statement for Young purported to give many facts supposedly relating to what the evidence would show. Young's cause of action could not be enlarged without amendment of the pleadings.

As indicated, judgment was rendered against Young, on his pleadings and opening statement.

The petition alleged Triggs signed a compromise settlement with Young. The writing was attached to the petition, and the allegation was not in accord with fact.

The petition alleged Triggs agreed to coöperate with HOLC, did not do so, and if he had done so Young would have procured $300 in bonds. The agreement was in writing, contained no provisions for coöperation by Triggs, and did not provide that Young would get any sum in bonds.

The opening statement for Young said Hauber was as much a party to the compromise settlement as Triggs. The statement was not in accordance with fact.

There is no allegation in the petition that HOLC ever accepted

Young's application to refund indebtedness, and the consent of Triggs to accept bonds was in a document carefully framed so that HOLC was not bound to do anything.

The consideration for the instrument of September 26, 1934, was specified. HOLC would incur trouble and expense. Triggs' consent to take bonds was to last for 90 days, and thereafter until a 10-day notice was given. HOLC gave nothing for its option to incur trouble and expense, and the pleadings do not show HOLC ever did incur trouble or expense pursuant to Triggs' application. Until that occurred, Triggs could withdraw if he so desired.

The pleadings show the instrument of September 26, 1934, was abandoned. In December, 1934, HOLC sent Triggs another paper, the same as that of September 26, 1934, except dates. This was a new proposal to Triggs that he consent to take bonds.

Hauber acquired the certificate of purchase on December 7, 1934. At that time nothing had been done pursuant to Young's application, or pursuant to the instrument of September 26, 1934. For a period subsequent to December 7, 1934, HOLC had no money. The first thing that occurred when HOLC was in funds was, HOLC sent to Triggs a new proposal that he take bonds. Triggs then had no interest in the land. He had sold the certificate of purchase. Triggs made no complaint that he had parted with the certificate through fraud or because of undue influence practiced by Hauber. Triggs was satisfied and, according to his answer, is still satisfied. Whatever benefit the Youngs might have derived from the instrument of September 26, 1934, was lost, not because of anything Hauber did, but because of the conduct of HOLC.

When HOLC attempted to make a new start toward refunding the Young indebtedness, Triggs could do nothing. Hauber had signed no instrument binding him to do anything, and was under no obligation to do anything which might result in ultimate benefit to Young. Whatever Hauber did with the new paper was of no legal significance to anybody but himself. He never did establish any relation with HOLC which might be of benefit to Young.

On April 1, 1935, Young made an offer to pay Hauber $300 for his interest in the land, evidenced by ownership of the certificate of purchase. Hauber was under no obligation to accept this new proposition, and rightfully declined it. The redemption period having then expired, Hauber rightfully took out his sheriff's deed.

There was no application by Young to amend his pleading, and

insinuations and fulminations against Hauber, contained in the opening statement, amounted to nothing. The pleadings do not show wrongful interference by Hauber with any contractual or other relation between Triggs and HOLC which might result in ultimate benefit to Young. The pleadings do not show basis for any other cause of action in favor of Young and against Hauber or Triggs, and the motion for judgment on the pleadings was properly sustained.

The judgment of the district court is affirmed.