26101. BRADEN *v.* HAAS, HOWELL & DODD.

DECIDED JULY 30, 1937.

*J. K. Jordan,* for plaintiff.

*Haas, Gambrell & Gardner,* for defendants.

Following is the opinion of the majority of the court, from which I dissent: In the first count of the petition recovery is sought for the wrongful act of the defendant in causing a breach of contract, and in the second count for wrongful interference with the making of a contract. It is clear that no contract is shown to have been consummated; and we think equally clear that there was no actionable interference as claimed in the second count. The telegrams set out in the petition fail to show that the negotiations had proceeded to such a stage that it could be said that there was reasonable assurance that Mrs. Adamson would enter into the contract desired by the plaintiff as to the loan extension. Mrs. Adamson made it known that she would require some amortization to offset depreciation of the property, in addition to the terms proposed by the plaintiff, and the answer of the plaintiff did not constitute an acceptance, but plainly amounted to a counter-offer with no reference whatever to amortization. Upon receiving the final message from the plaintiff, Mrs. Adamson unmistakably indicated to the plaintiff that she was not yet ready to grant an extension of the loan on the terms proposed by the plaintiff; and

furthermore, that she had no intention personally to execute the contract desired, but was placing the matter entirely in the hands of her agent, the defendant. She said in her last telegram to the plaintiff: "Absolutely necessary deal through my agent Haas-Howell as I pay them for service to handle all details. No commission expected on forced renewal where no new funds are procured. Foreclosure expense to date must be paid and *future amortization* specified. *Otherwise* we seem to agree on terms." (Italics ours.) Whatever agreement might be made as to amortization, therefore, would have to be arranged with her agent, and without such an agreement manifestly the loan would not be extended.

It is alleged in the petition that the amortization referred to by Mrs. Adamson "meant an amount of principal reduction equal to the depreciation of the property, which is five per cent. annually of the amount of the loan, to wit, $387.50." This, however, is a mere conclusion without any allegation of supporting facts, and is not admitted by the demurrer. It can not be said from the telegrams of Mrs. Adamson that she would not herself have required an amortization which would have been wholly unacceptable to the plaintiff. Nor can it be presumed that she would have been content with what the plaintiff *concludes* that Mrs. Adamson meant the amortization to be. It is inescapable that any agreement as to full terms was to come through the defendant, her duly constituted agent. The defendant did not make the desired extension, but instead caused a sale of the property under the foreclosure. Mrs. Adamson could have declined to make the proposed extension; and as the defendant was her authorized agent to act for her in this matter, it likewise had the right to decline to make such agreement, and especially is this true when it acted in a legitimate manner and within its rights as agent for Mrs. Adamson in so declining. "There is a clear distinction between inducing A to break his contract with X and inducing A not to enter into a contract with X. A man who induces another to break his contract induces him to do what is actionable, but no liability attaches to the refusal to make a contract. Consequently, where A is induced not to contract with X, the inducement, to be actionable, must be of an unlawful kind, as for example, acts of coercion and intimidation." Anson on Contracts

(American edition by Corwin), 345. Before the interference with the making of a contract is actionable it must be malicious, or the act or conduct of the party so interfering must amount to a resort to untruthful, fraudulent, abusive, violent, or coercive means. It is alleged that the defendant's act was in consequence of a desire to make profits for itself in handling Mrs. Adamson's property in the manner alleged, and that the defendant would have extended the loan if the plaintiff had paid it "the unjust commission" of five per cent. demanded, and that by interfering with the negotiations as to the consummation of the desired contract an actionable tort was committed on the plaintiff. In *Young v. Hauber*, 144 Kan. 303 (58 Pac. (2) 1083), the petition alleged that the mortgagee had agreed with the mortgagor to accept Home Owners Loan Corporation bonds in settlement of the mortgage debt, and that the defendant, with knowledge thereof and for the purpose of profit to himself, interfered with such refunding arrangements and induced the mortgagee to assign the mortgage debt to himself. Certain negotiations were had as to the issuance of the H. O. L. C. bonds. The court, in sustaining a general demurrer to the petition, held that there was no meeting of minds, no valid contract between the H. O. L. C. and the mortgagee, and in the opinion said that the defendant "had signed no instrument binding him to do anything, and was under no obligation to do anything which might result in ultimate benefit to" the plaintiff. The mere motive of profit does not render acts or conduct, otherwise legal, actionable. *Macauley v. Tierney*, 19 R. I. 255 (33 Atl. 1, 37 L. R. A. 455, 61 Am. St. R. 770); *National Protective Asso. v. Cumming*, 170 N. Y. 315, 63 N. E. 369, 59 L. R. A. 135, 88 Am. St. R. 648). Nor will malice be presumed when the person acts for the protection of his own legitimate business interests, though he does so because of a desire for profit to himself. The defendant was not a third party or intermeddler, but had the exclusive authority to act for Mrs. Adamson in this matter; and it had the right to act for the best interest of its principal and itself, so long as it did so legitimately. It seems that it acted within its rights in this matter. We do not think a cause of action is set out in either count of the petition. The court did not err in sustaining the general demurrer.

*Judgment affirmed. Sutton and Felton, JJ., concur.*

STEPHENS, J., dissenting. It appears from the allegations in the petition, whether or not there was a subsisting enforceable contract between the plaintiff and Mrs. Adamson for the extension of the loan, that Mrs. Adamson had offered to extend the loan on the conditions named, and without the exaction of any commission from the plaintiff to be paid for such extension; that Mrs. Adamson referred the plaintiff to the defendant as her agent to consummate the extension agreement on the terms indicated by Mrs. Adamson, which were accepted by the plaintiff, that the defendant refused to consummate the extension agreement on the terms indicated, and permitted the property to be sold under foreclosure; that the defendant did this because of the failure and refusal of the plaintiff to pay the defendant a commission, and for the defendant's "own profit by way of commissions to be obtained in foreclosing and reselling the property;" that, but for these acts of the defendant, Mrs. Adamson would have entered into an extension agreement on the terms indicated, without any commission being paid by the plaintiff; that therefore the defendant wrongfully and to the plaintiff's damage prevented Mrs. Adamson from carrying out her promise to renew the loan, which Mrs. Adamson, but for the defendant's conduct, would have done.

It is well established that it is an actionable wrong for one, maliciously and without just cause, to induce one person to break a contract with another. *Employing Printers Club* v. *Dr. Blosser Co.*, 122 *Ga.* 509 (50 S. E. 353, 69 L. R. A. 90, 106 Am. St. R. 137, 2 Ann. Cas. 694); *Luke* v. *DuPree*, 158 *Ga.* 590 (124 S. E. 13); *Carpenter* v. *Williams*, 41 *Ga. App.* 685 (2) (154 S. E. 298). Maliciously inducing a person to refrain from entering into a contract with another which he otherwise would have entered into, is generally held to be an actionable wrong. In 62 C. J. 1137, it is stated: "Even though no wrongful or unlawful means are employed to accomplish the result, inducing third persons to refrain from the formation of contracts, when done for solely malicious motives, has been commonly held to constitute a tort, the result being obtained in some jurisdictions, at least as to particular kinds of prospective contracts, by virtue of statutory provisions. Malice, in this connection, is not to be understood in its popular sense of ill will against a person, but in its legal sense, as characterizing an unlawful act done intentionally with-

out just cause or excuse. Even though the circumstances do not establish that the interference was malicious, the means employed or operative in preventing the formation of the contract must, in order that liability in tort may not attach, be lawful and proper in nature; and the conduct of the person responsible for that result is a tort if it involves resort to untruthful, fraudulent, abusive, violent, or coercive, means." The leading case establishing the doctrine that an actionable wrong arises from the malicious inducement of a person to refrain from entering into a contract with another person, which he otherwise would have made, seems to be the English case of Temperton v. Russell, 1893, 1 Q. B. 715. In that case Lord Esher laid down the rule that has been generally followed. He stated as follows: "The next point is whether the distinction taken for the defendants between the claim for inducing persons to break contracts already entered into with the plaintiff, and that for inducing persons not to enter into contracts with the plaintiff, can be sustained, and whether the latter claim is maintainable in law. I do not think that distinction can prevail. There was the same wrongful intent in both cases; wrongful because malicious. There was the same kind of injury to the plaintiff. It seems rather a fine distinction to say that where a defendant maliciously induces a person not to carry out a contract already made with the plaintiff, and so injures the plaintiff, it is actionable, but where he injures the plaintiff by maliciously preventing a person from entering into a contract with the plaintiff, which he would otherwise have entered into, it is not actionable." While there are authorities contra, the weight of authority in America seems to be in favor of the rule as announced by the English courts. In support of this doctrine see Kamm v. Flink, 113 N. J. L. 582 (175 Atl. 62, 99 A. L. R. 1); Lewis v. Bloede, 202 Fed. 7; Krigbaum v. Sbarbaro, 23 Cal. App. 427 (138 Pac. 364); Carnes v. St. Paul Union Stockyards Co., 164 Minn. 457 (205 N. W. 630); Flood v. Jackson (1895), 2 Q. B. 21; Bitterman v. L. & N. R. Co., 207 U. S. 205 (28 Sup. Ct. 91, 52 L. ed. 171); 99 A. L. R. 11, note; May v. Wood, 172 Mass. 11 (51 N. E. 191). Malice, in the sense of what constitutes malicious inducement of another to refrain from entering into a contract with a third person, is the purpose or intention of the person causing the interference, to injure the third person, or of benefiting at

the latter's expense. As stated by Lord Esher in Flood v. Jackson (1895), 2 Q. B. 21, 38: "One person has a perfect right to advise another not to make a particular contract, and that other is at perfect liberty to follow that advice. But if the first person uses that persuasion with intent to injure the other, or to injure the person with whom he is going to make the contract, then the act is malicious, and the malice makes that unlawful which would otherwise be lawful." In Lewis v. Bloede, 202 Fed. 7, 20, it is stated that "malice," as used in referring to the malicious interference to the formation of a contract "does not import personal ill will," but refers to an interference "with the design of injuring the plaintiff or gaining some advantage at his expense." The term "malicious," as applied to the act of interference to induce a breach of contract, is defined as follows in *Employing Printers Club* v. *Dr. Blosser Co.*, supra: "The term 'malicious' used in this connection, is to be given a liberal meaning. The act is malicious when the thing done is with the knowledge of the plaintiff's rights, and with the intent to interfere therewith. It is a wanton interference with another's contractual rights. Ineffective persuasion to induce another to violate his contract would not, of itself, be actionable, but if the persuasion be used for the purpose of injuring the plaintiff, or benefiting the defendant at the expense of the plaintiff, with a knowledge of the subsistence of the contract, it becomes a malicious act, and if injury ensues from it a cause of action accrues to the injured party." See *Luke* v. *DuPree*, 158 *Ga.* 590 (124 S. E. 13); *Rhoden* v. *State*, 161 *Ga.* 73 (129 S. E. 640); cases cited in 99 A. L. R. 19, note. Where Mrs. Adamson was ready and willing, and had agreed, to extend the loan on terms accepted by the plaintiff, and would have done so but for her agent's conduct in refusing to put into execution Mrs. Adamson's intention, and the agent did this because the plaintiff would not pay the agent a renewal commission, or because the agent would receive a commission on foreclosing, the agent's conduct in preventing the consummation of the contract, which Mrs. Adamson was willing to consummate, was for this reason malicious. Where the defendant maliciously and unjustifiably caused Mrs. Adamson to refrain from executing the contemplated beneficial contract with the plaintiff which Mrs. Adamson would have executed but for the defendant's conduct,

the plaintiff suffered damage therefrom, and the defendant is liable to the plaintiff therefor.

It is not essential to the plaintiff's right of action against the defendant in causing Mrs. Adamson to refrain from making the contract with the plaintiff, that, but for the defendant's conduct, the contract would actually have been consummated. It is only necessary to show "a reasonable assurance, in view of all the circumstances," that the plaintiff and Mrs. Adamson would have entered into the contract. 62 C. J. 1140. The plaintiff alleges her willingness to meet the terms imposed by Mrs. Adamson as a condition to the extension of the contract of loan, and the plaintiff's acceptance of these terms. It may be assumed that there was no meeting of minds between the parties as to what amount should be paid as amortization, and therefore that no contract arose between the parties. It appears however, as alleged in the petition, that Mrs. Adamson, in her proposal to the plaintiff stating the terms on which Mrs. Adamson would renew the contract and extend the time of payment, had in mind or intended that the amortization should be an annual reduction of $387.50, and that the plaintiff accepted this proposal of Mrs. Adamson. As all the other terms of renewal were certain and had been agreed on by both parties, it seems reasonably certain that the parties would have entered into a contract under which the amount fixed as amortization would have been in the sum indicated. It therefore appears with reasonable assurance, that, but for the defendant's alleged interference, the contract of extension between the plaintiff and Mrs. Adamson would have been entered into. It is immaterial that the defendant, in causing Mrs. Adamson to refrain from making the contemplated beneficial contract with the plaintiff by refusing to carry out Mrs. Adamson's agreement with the plaintiff, was acting as the authorized agent of Mrs. Adamson. While the defendant as Mrs. Adamson's agent in the negotiations may have stood in a confidential relationship with Mrs. Adamson, and may have had the right to deal frankly with her, and even to advise her in her own interests not to enter into the contemplated contract with the plaintiff, the defendant can not shield itself behind such confidential relationship, and, on the ground of its right to deal frankly with Mrs. Adamson, the defendant's principal, and to advise her not to make the contem-

352

plated contract, wrongfully and maliciously to the plaintiff cause Mrs. Adamson to refuse to make the contemplated contract. An agent may be held liable in damages in tort for maliciously and unjustifiably inducing his principal to refuse to complete a contract. See cases cited with approval in *Carpenter* v. *Williams,* 41 *Ga. App.* 685, 691 (154 S. E. 298).

The tortious wrong complained of being the wrongful and malicious interference by the defendant in preventing Mrs. Adamson from entering into the contract with the plaintiff, which Mrs. Adamson would have done but for the defendant's conduct, in order to establish a right of action it is only necessary for the plaintiff to show that under the circumstances alleged the defendant's conduct prevented the formation of the contract. The plaintiff's damage is in being prevented from obtaining the contract of renewal. "The damage for which the recovery is had is not the loss of the value of the actual contracts by reason of their non-fulfilment, but the loss of advantages, either of property or of personal benefit, which, but for such interference, the plaintiff would have been able to attain or enjoy." Walker *v.* Cronin, 107 Mass. 555, 565. The allegation in the petition, that "L. E. Mock was the officer or agent of defendant corporation who acted for it with its authority in all matters in which said corporation dealt with plaintiff respecting said loan and communications in reference thereto," is, as against general demurrer, sufficient as an allegation that the alleged acts of the defendant complained of by the plaintiff were acts of the defendant by and through its agent, L. E. Mock. The following cases relied on by the defendant are clearly distinguishable: *Southeastern Fair Asso.* v. *Jung,* 24 *Ga. App.* 707 (102 S. E. 32); *Atlanta Baseball Co.* v. *Lawrence,* 38 *Ga. App.* 497 (144 S. E. 351); *Murphey* v. *New South Brewery Co.,* 145 *Ga.* 561 (89 S. E. 704); *Wikle* v. *L. & N. R. Co.,* 116 *Ga.* 309 (42 S. E. 525); *Daniel* v. *Excelsior Auto Co.,* 31 *Ga. App.* 621 (121 S. E. 692). I am of the opinion that the petition as amended sets out a cause of action, and that the court erred in sustaining the demurrer.